R. J. O'ROURKE, APPELLANT, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENT.

Argued May 6, 1957—Decided June 24, 1957.

608

*Mr. Murry Brochin* argued the cause for the appellant *(Mr. Israel B. Greene,* attorney).

*Mr. Nicholas Conover English* argued the cause for the respondent Western Electric Company *(Messrs. McCarter, English & Studer,* attorneys).

*Mr. Clarence F. McGovern* argued the cause for the respondent Board of Review.

The opinion of the court was delivered by

JACOBS, J.    This is an appeal from a decision of the Board of Review which found that the appellant was ineligible for unemployment benefits during a vacation shutdown of the Western Electric Company's plant.    We certified on our own motion.    See *R. R.* 1:10–1(*a*).

The appellant Robert J. O'Rourke was employed on July 10, 1956 as a record clerk at the Kearny Works of the Western Electric Company.    Three days later the plant was largely (though not entirely) shut down to enable employees to

take their annual vacations. Mr. O'Rourke asked whether there was any work for him during the shutdown period (which continued for two weeks) and his supervisor told him there was none because of his limited experience. He asked for and received "unemployment forms" and duly filed his claim. He testified that during the shutdown he wanted to work and was available for work; that he tried during the shutdown to get work at supermarkets and elsewhere, but was unable to find any; and that he was willing to take "most anything" for the two-week period. He evidently was a member of Local 1470 of the International Brotherhood of Electrical Workers which had a collective bargaining agreement with Western Electric. That agreement set forth that employees with six months or more of service would receive vacations with pay as therein provided; it did not in express terms require a shutdown or designate the vacation dates but did provide that "vacations shall be taken during the two-week standard vacation period except for those employees who are required by the Company to work during that period due to the needs of the business." The Board of Review found that during the shutdown period Mr. O'Rourke performed no services and received no remuneration but "was ready and willing to accept work"; it also found that he "knew in advance that the shutdown would occur." It expressed the view that Mr. O'Rourke was "unemployed" within *R. S.* 43:21–19(*m*)(1), was able to work, "available for work" and actively sought work within *R. S.* 43:21–4(*c*), and was not disqualified as having left work "voluntarily without good cause" within *R. S.* 43:21–5, but nevertheless considered itself bound to declare him ineligible for benefits because of recent decisions of the Appellate Division which applied *Glover v. Simmons Co.,* 17 *N. J.* 313 (1955). It took the position that although *L.* 1956, *c.* 65, may have been intended to overcome *Glover,* its actual terminology did not accomplish that purpose.

In *Glover* the court found that an employee who was without work or pay for two weeks because of a July vacation shutdown was not eligible for unemployment benefits;

the employee there involved was a member of the labor union which had entered into a collective bargaining agreement with the employer providing for vacations during the first two weeks of July. The *Glover* case was decided early in 1955; on January 16, 1956 Assembly No. 14 was introduced in the New Jersey Legislature; it sought to amend *R. S.* 43:21–19(*m*)(1) by adding the phrase "including any week during which he is on vacation without pay" to the definition of unemployment which theretofore read as follows: "An individual shall be deemed 'unemployed' for any week during which he is not engaged in full-time work and with respect to which his remuneration is less than his weekly benefit rate." The proposed amendment was clearly intended to overcome *Glover;* indeed, the introducer's statement attached to the bill expressly set forth that its purpose was to provide unemployment compensation for an employee otherwise qualified "who is required to accept a vacation without pay," and that the existing law had been construed "to preclude unemployment compensation benefits in such cases." See *Deaney v. Linen Thread Co.*, 19 *N. J.* 578, 584 (1955). On March 26, 1956 the bill was passed in the Assembly by a vote of 49–1.

On May 24, 1956 the Senate adopted a committee amendment which added the following proviso after the phrase "including any week during which he is on vacation without pay": "provided, such vacation is not the result of the individual's voluntary action." As thus amended Assembly No. 14 was passed in the Senate by a vote of 18–0, and on May 28, 1956 the Assembly concurred by a vote of 49–0; the Governor affixed his approval on June 6, 1956. In construing the enactment we must give effect to the overriding plan or purpose of the Legislature as fairly expressed in its language. *In re Roche's Estate*, 16 *N. J.* 579, 587 (1954). We may freely look to its history for whatever aid it may furnish in ascertaining the true sense and meaning of the legislative terminology. *Lloyd v. Vermeulen*, 22 *N. J.* 200, 206 (1956). And we must seek to avoid an interpretation that will render any part of the

enactment "inoperative, superfluous or meaningless." *Hoffman v. Hock*, 8 *N. J.* 397, 406 (1952); *Abbotts Dairies v. Armstrong*, 14 *N. J.* 319, 328 (1954).

The Board of Review suggests that the holding in *Glover* turned on the finding that the claimant there was not "available for work" under *R. S.* 43:21–4(c), and that the Legislature should have amended that section rather than *R. S.* 43:21–19(m)(1). But it matters not what section was amended provided the legislative purpose to reject *Glover* may fairly be gathered from its final enactment.[1] The original draftsman of Assembly No. 14 construed *Glover* as a holding that a person on a required vacation without pay was not unemployed within *R. S.* 43:21–19(m)(1), and presumably had in mind the language in the opinion which stated that "*R. S.* 43:21–19(m)(1) should not be given a literal abstract meaning." See 17 *N. J.*, at *page* 322. In any event, counsel for Western Electric now states that "it may be conceded that were it not for the proviso" added by the Senate "the amendment would have overruled the doctrine of the *Glover* case." He contends, however, that the effect of the proviso was to nullify the original purpose of Assembly No. 14; we do not so read it. If the Senate had disagreed with the basic design of Assembly No. 14 it could and presumably would have voted against it. It did not do that but, on the contrary, retained the original language intact, adding a protective proviso which we believe was properly calculated to avoid the payment of benefits to

---

[1]Following the Board's decision in the instant matter a bill (S. 24) amending *R. S.* 43:21–4(c) was introduced in the New Jersey Senate. The Statement attached thereto set forth that its purpose was to provide unemployment compensation "for an employee otherwise qualified who is required to accept a vacation without pay"; that the existing law had been construed "to preclude unemployment compensation benefits in such cases" and that the amendment of *R. S.* 43:21–4(c) was intended "to effectuate the intention of the Legislature as set forth in its Statement attached to the amendment to 43:21–19(m)(1) which was approved June 6, 1956." The bill with a phraseology change was passed by the Senate on June 3, 1957 by a vote of 17–0, and was passed by the Assembly on June 17, 1957 by a vote of 33–2.

an employee who has the opportunity of working but individually chooses to take a vacation without pay. Such an unpaid vacation may fairly and realistically be said to be the "result of the individual's voluntary action" within the meaning of the proviso; on the other hand, an unpaid vacation of an employee who wants to work and is ready and able to do so, but is unable to obtain work because the plant is shut down in accordance with a collective bargaining agreement between his union and his employer, may not fairly or realistically be said to be the "result of the individual's voluntary action." See *Campbell Soup Co. v. Board of Review, Div. of Employment Security*, 13 *N. J.* 431 (1953). If Western Electric's interpretation of the proviso were accepted, it would indeed amount to a strange form of legislative approval rather than a disapproval of the holding in *Glover*. It is inconceivable that the very same Assemblymen who voted unequivocally to nullify the statutory interpretation in *Glover* would shortly thereafter vote unanimously for its perpetuation. It seems evident to us that the Assembly as well as the Senate at all times intended to reject *Glover* while excluding, under the Senate's proviso, benefits to employees who individually choose to accept vacations without pay though they have the opportunity of working. It may be noted, in passing, that when the Senate approved Assembly No. 14 as amended the newspapers reported its action as a corrective measure designed to overcome *Glover*. Thus, the *Trenton Times* of May 25, 1956, *p.* 2, had this to report:

"Enforced vacations * * *—To overcome a court ruling against such payments, a bill was approved to allow unemployment benefits for forced unpaid vacations."

And the *Newark Evening News* of May 25, 1956, *p.* 17, contained the following item:

"Trenton—The Senate yesterday approved a bill which would remedy a defect in the unemployment compensation law so workers could receive weekly benefits while on vacation without pay. The

measure which had Assembly approval was moved by Sen. Frank
W. Shershin (R. Passaic). He said the defect in the law was
exposed by a State Supreme Court ruling last February."

█ It is, of course, true that the statutory language itself
rather than any prevailing general understanding must govern
in the ascertainment of its meaning. However, we are
satisfied that the language itself, read as it must be in the
full light of its history, purpose and context (*Ablondi v.
Board of Review,* 8 *N. J. Super.* 71, 75 (*App. Div.* 1950)),
firmly supports the conclusion that *L.* 1956, *c.* 65, was
intended to and did nullify the statutory construction
embodied in *Glover.* Mr. O'Rourke's original employment
and the plant shutdown at Western Electric occurred after
*L.* 1956, *c.* 65, took effect. He was unemployed within *R. S.*
43:21–19, as amended, was eligible within *R. S.* 43:21–4,
and was not disqualified within *R. S.* 43:21–5; the Board
erred in its determination that he was not entitled to benefits
under the Unemployment Compensation Law. See *Teichler
v. Curtiss-Wright Corporation,* 24 *N. J.* 585 (1957);
*Watson v. United States Rubber Company,* 24 *N. J.* 598
(1957); *John A. Roebling's Corp. v. Bodrog,* 24 *N. J.* 604
(1957).

Reversed.

*For reversal*—Justices WACHENFELD, BURLING, JACOBS
and WEINTRAUB—4.

*For affirmance*—Justices HEHER and OLIPHANT—2.