145 N.J. Super. 532 (1976)
368 A.2d 416
JOHN ACCARDI AND FRANCES M. ACCARDI, PLAINTIFFS,
v.
MAYOR AND COUNCIL OF THE CITY OF NORTH WILDWOOD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, THE BOARD OF ADJUSTMENT OF THE CITY OF NORTH WILDWOOD, RAY RAKOWSKI, BUILDING INSPECTOR OF THE CITY OF NORTH WILDWOOD & JOSEPH BELZ, DEFENDANTS. AVALON HOME AND LAND OWNERS ASSOCIATION, A NEW JERSEY CORPORATION NOT FOR PROFIT, PLAINTIFF,
v.
BOARD OF ADJUSTMENT OF THE BOROUGH OF AVALON; WILLIAM NOBLE, CHAIRMAN OF THE BOARD OF ADJUSTMENT; JOHN P. MILLAR, VICE CHAIRMAN; THOMAS F. BOYLE; LAWRENCE HART AND DAVID F. SNOW, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 15, 1976.
*537 Mr. Joseph C. Visalli for plaintiffs John Accardi and Frances M. Accardi.
Mr. William Balliette for defendants Mayor and Council of the City of North Wildwood and Ray Rakowski, Building Inspector of City of North Wildwood (Messrs. Cafiero & Balliette, attorneys).
Mr. Stephen S. Rubins for defendant Joseph Belz (Messrs. Rubins, Lamanna & Waldron, attorneys).
Mr. Jeffrey K. Israelow for defendant North Wildwood Board of Adjustment (Mr. Anthony J. Fulginiti, attorney).
Mr. Robert F. Dunlap for intervenors James and Katherine Kaminski (Messrs. Lipman, Antonelli, Batt & Dunlap, attorneys).
Mr. David H. Romberger for intervenor North Wildwood Hotel and Motel Associations.
Mr. N. Douglas Russell for plaintiff Avalon Home and Land Owners Association, a New Jersey Corporation not for profit.
Mr. Henry Gorelick for defendants Borough of Avalon Board of Adjustment; William Noble, Chairman of Board of Adjustment; John P. Millar, vice chairman; Thomas F. *538 Boyle; Lawrence Hart and David F. Snow (Messrs. Hayman, Gorelick & Groon, attorneys).
Mr. Henry Ramer for intervenor Common Cause.
GRUCCIO, J.S.C.
The above two cases were consolidated for argument since both dealt with the question of what a public body can discuss in a private session under the Open Public Meetings Act (hereinafter the "Sunshine Law"), N.J.S.A. 10:4-6 et seq.
In Accardi one Belz applied to the North Wildwood Board of Adjustment for a variance to convert an old garage and auto showroom (which was a nonconforming use) into a delicatessen, beauty shop and gift shop. On March 29, 1976 the board recommended granting the variance and on May 18, 1976 the city council approved the recommendation. Thereafter, plaintiffs filed a complaint in lieu of prerogative writs to enjoin the use granted by the variance. The trial judge remanded the matter to the board for a de novo hearing based upon the incomplete and inadequate record below.
On June 16, 1976 the board conducted a second hearing. At this second hearing the board members went into a private session with the solicitor. Upon their return they recommended the approval of the variance. On June 29, 1976, in private session, the city council approved the variance for the second time, whereupon the present action was commenced.
In Avalon plaintiff seeks to compel defendant Avalon Board of Adjustment (hereinafter, Avalon board) to conduct its meetings in public and to enjoin the board from going into a private session for discussion, review and decision making. Plaintiff Avalon Home and Land Owners Association (hereinafter association) is a nonprofit corporation consisting of home owners in the Borough of Avalon who are either permanent or summer residents. At its public meetings the Avalon board permits the introduction of evidence in public and then goes into private closed session for *539 review, discussion and initial decision. The board then opens the meeting, gives its finding of facts in public and votes on the matter in public. The board justifies its private sessions by a resolution it passed which states:
Whereas, Chapter 231 Public Law of 1975 (Sunshine Law) authorizes closed sessions following public hearing in quasi-judicial matters and
Whereas, proceedings before the Zoning Board of Adjustment of the Borough of Avalon are quasi-judicial in nature; and Whereas, the Board desires to discuss the merits of the application in closed session subject to its disclosure to the public at the conclusion thereof:
Now, be it Resolved, that the meetings of the Zoning Board of Adjustment of the Borough of Avalon be and the same is hereby closed to the public, subject to disclosure of the results of the discussion at the conclusion thereof later this evening.
The question is whether these private sessions are in accordance with the Sunshine Law. Defendant Avalon board alleges it is exempt because it is not a "public body" within the meaning of the Sunshine Law but rather a part of the judicial branch which is exempt under the Sunshine Law. N.J.S.A. 10:4-8a reads:
"Public body" means a commission, authority, board, council, committee or any other group of two or more persons organized under the laws of this State, and collectively empowered as a voting body to perform a public governmental function affecting the rights, duties, obligations, privileges, benefits, or other legal relations of any person, or collectively authorized to spend public funds including the Legislature, but does not mean or include the judicial branch of the government, any grand or petit jury, any parole board or any agency or body acting in a parole capacity, the State Commission of Investigation or any political party committee organized under Title 19 of the Revised Statutes.
The Right to Know Law, N.J.S.A. 10:4-1 et seq., was the predecessor to the Sunshine Law. The purpose of the Right to Know Law was to admit the public to any meeting of a public body where official action was taken. N.J.S.A. 10:4-3. A public body in that law was defined essentially *540 the same as a "public body" under the Sunshine Law. In Wolf v. Park Ridge Bd. of Adj., 79 N.J. Super. 546, 552 (App. Div. 1963), a zoning board of adjustment was held to be a "public body" within the meaning of the Right to Know Law and the exception of the judiciary from the law was held to be inapplicable to such board. Therefore, based upon Wolf and the clear definition of a "public body" in N.J.S.A. 10:4-8(a), I find the Avalon board to be a "public body" within the meaning of the Sunshine Law.
Defendant Avalon board alleges that even if the Sunshine Law applies to it, it is complying with the law by publicly disclosing the facts reached in its private deliberations. I do not agree. The clear language of N.J.S.A. 10:4-7 and the public policy of the statute contained therein contradict defendant's allegation.
Few statutes contain within them the public policy behind their enactment. One statute that does is the statute dealing with labor injunctions, N.J.S.A. 2A:15-52, which effects labor's highly regarded and highly protected right to exert pressure on management by striking or picketing. The Legislature's inclusion of the public policy within the statute itself implies the importance which the Legislature placed upon its proper interpretation of the statute in order that the purpose behind the statute might be attained. For this reason the public policy language contained in N.J.S.A. 10:4-7 should be read carefully.
N.J.S.A. 10:4-7 states:
The Legislature finds and declares that the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to the enhancement and proper functioning of the democratic process; that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society, and hereby declares it to be the public policy of this State to insure the right of its citizens to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way except only in those circumstances where otherwise the public interest *541 would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion.
The language contained therein granting the public the right to "witness in full detail all phases of the deliberation * * * of public bodies" (emphasis added) is clear. The term "deliberation" includes the discussion and evaluation of facts which the Avalon board insists it has the right to discuss in private session. The clear meaning of N.J.S.A. 10:4-7 is evidenced in a pamphlet prepared by the State of New Jersey; "Guidelines on the Open Public Meetings Law" section VI, states (at 12):
VI. EXECUTIVE OR CLOSED SESSIONS (§ 7)
May a public body hold a closed session to discuss a matter before it votes on it?
Answer:
Generally, no. A public body may hold a closed session to discuss a matter only if that matter falls within one of the exceptions to the public meetings requirement contained in the Law and only if the procedure set forth in the Law for the holding of closed sessions is followed. If the matter to be discussed does not fall within one of the stated exceptions, then even if the matter is sensitive or controversial, both the discussion and any voting must take place in public.
It will be shown later on that none of the exceptions listed in N.J.S.A. 10:4-12(b) apply to the private discussions of factual evidence concerning applications before the Avalon board. Therefore, the discussions must take place in public.
One purpose of the Sunshine Law is to promote the public's confidence in the public bodies which govern them. N.J.S.A. 10:4-7. The method which the Legislature chose to accomplish this was by having public bodies operate in an open, public atmosphere. N.J.S.A. 10:4-7. Based upon the clear language and the public policy behind the Sunshine Law, I hold that the Avalon board must discuss its fact finding process in public, where none of the exceptions of N.J.S.A. 10:4-12(b) is applicable.
*542 Defendants in the two consolidated matters allege that their private sessions fall within the exception to the Sunshine Law codified at N.J.S.A. 10:4-12(b)(7), which reads:
b. A public body may exclude the public only from that portion of a meeting at which the public body discusses:

* * * * * * * *
(7) Any pending or anticipated litigation or contract negotiation other than in subsection b.(4) herein in which the public body is, or may become a party.
Any matters falling within the attorney-client privilege, to the extent that confidentiability is required in order for the attorney to exercise his ethical duties as a lawyer.
In its closed session defendant Avalon board discussed neither matters covered by the attorney-client privilege nor those which related to pending or anticipated litigation, but merely discussed the merits of an application before it. If it is defendant's contention that any variance application is "in anticipation" of litigation because any application can be appealed, then this contention is contrary to N.J.S.A. 10:4-7 which grants the public the right to be present at all meetings of public bodies and the right to witness "all phases of deliberation, policy formulation and decision making of public bodies" (Emphasis supplied). To deem all variance applications as "in anticipation of litigation" is to defeat the very purpose of the Sunshine Law. This the court will not do.
Defendants in Accardi also contend that N.J.S.A. 10:4-12(b)(7), in particular the exception concerning "pending or anticipated litigation," applies to their private sessions. Defendants' contention is based upon the court's remand of the variance application to the North Wildwood Board for a new hearing, the court's retention of jurisdiction over the matter and the adversary nature of the variance presentation before the North Wildwood Board. However, it was the factual considerations on the merits of granting a variance which were before the North Wildwood Board and *543 not the litigable considerations concerning the variance. After a factual presentation, the North Wildwood Board members went into a private session and returned with a resolution which was voted on publicly without any further deliberation on the merits. Just as a zoning board may go into a private session to discuss legal issues with its solicitor which fall within the purview of the attorney-client privilege, so too may defendants go into a private session to discuss matters which deal with the strategies or consequences of the pending or anticipated litigation but not with the merits of an application. The exceptions listed in N.J.S.A. 10:4-12(b) must be strictly construed so the broad public as set forth in the open public meetings can be realized.
Defendant Avalon board further alleges its exclusion of the public from its deliberations falls within the exception at N.J.S.A. 10:4-12(b)(9). Exception (b)(9) is totally inapplicable to our fact situation. Exception (b)(9) allows public bodies to conduct private deliberations where the result may be "the imposition of a ... penalty ... or suspension or loss of a license or permit. * * *" That is not the case here. The Avalon board is holding private deliberations to analyze and weigh the facts dealing with applications to the Avalon board for variances and other commonplace zoning board applications which do not deal with the loss of licenses or permits or with the imposition of civil penalties.
Finally, defendant Avalon board justifies its private deliberation sessions under the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., which became effective August 1, 1976. N.J.S.A. 40:55D-9 provides in pertinent part:
a. Every municipal agency shall by its rules fix the time and place for holding its regular meetings for business authorized to be conducted by such agency. * * *
b. All regular meetings and all special meetings shall be open to the public. Notice of all such meetings shall be given in accordance with municipal regulations. An executive session for the purpose of discussing and studying any matters to come before the agency shall *544 not be deemed a regular or special meeting within the meaning of this act. [Emphasis supplied]
Defendant contends the Municipal Land Use Law supersedes the Sunshine Law since it is a more recent and more specific statute which applies to zoning and planning boards and other agencies which deal with land use law.
As previously mentioned, the Open Public Meetings Act limits the right of a public body to prohibit public presence at meetings to the exceptions enumerated in N.J.S.A. 10:4-12(b)(1-9), while the Municipal Land Use Law allows private executive sessions to discuss and study matters which may come before the agency. The pivotal question is whether the Municipal Land Use Law has grafted a broad exception onto the limited exceptions of the Open Public Meetings Act when a municipal land use agency is involved. The answer lies in a review of the legislative history of the Municipal Land Use Law.
It is a firmly established rule of statutory construction repeated time again in New Jersey law that repeal of a statute or parts thereof by implication is not favored in the law. Swede v. Clifton, 22 N.J. 303, 317 (1956).
In Bruck v. The Credit Corp., 3 N.J. 401 (1950), the court said:
The problem of determining the extent to which existing legislation is repealed by subsequent statutes ultimately resolves itself into legislative intent. To reach the legislative intent, the rule of construction is well defined upon which subsequent legislation will operate to repeal prior legislation without an express repealing clause. Where there are two acts on the same subject, the rule is to give effect to both if possible. [at 408]
It is only where the statutes are plainly repugnant to each other and one is designed to be a complete substitute for the other that an implied repealer may be said to exist. Traditionally our courts have held a duty to reconcile legislative enactments dealing with the same subject matter or with a phase of the same subject matter and to give effect *545 to both expressions of legislative will wherever it is possible to do so. Scancarella v. Dept. of Civil Service, 24 N.J. Super. 65 (App. Div. 1953).
A statute should not be construed to permit its purpose to be defeated by evasion. In order to determine whether there has been an evasion, the statute must be investigated with respect to its purpose and the practical results flowing from its enforcement. Grogan v. DeSapio, 11 N.J. 308 (1953). If statutory expression is susceptible of two meanings, that meaning will be adopted which comports with the general public policy of the State as manifested by its legislation rather than that which runs counter to such policy. Modern Industrial Bank v. Taub, 134 N.J.L. 260 (E. & A. 1946). Indeed, legislation must be accorded a rational interpretation consistent with its manifest purpose. State v. Link, 14 N.J. 446 (1954). Particular words of a statute are to be made responsive to the reason and spirit of the entire enactment. Sperry & Hutchinson Co. v. Margetts, 15 N.J. 203 (1954). Statutes in pari materia are construed as one act and the whole harmonized if possible. Modern Industrial Bank v. Taub, supra. Different statutes in pari materia, though enacted at different times, and not referring to each other, should be construed together as one system and as explanatory of each other. Commercial Trust Co. of N.J. v. Adelung, 137 N.J. Eq. 541 (E. & A. 1945). Most certainly a court, in expounding a statute, must not be guided by a single sentence or part of a sentence, but must look to the provisions of the whole statute and to its object and policy. Ideal Farms, Inc. v. Benson, 288 F.2d 608 (1961) cert. den. 372 U.S. 965, 83 S.Ct. 1087, 10 L.Ed.2d, 128 (1961). Statutory interpretations which lead to absurd or unreasonable results are to be avoided. State v. Gill, 47 N.J. 441 (1966). An interpretation which renders any part of a statute ineffective should be avoided. State v. Congdon, 76 N.J. Super. 493 (App. Div. 1962). It is also important to recall that the sense of the law is to be gathered from its object and the nature of its subject matter, the *546 contextual setting, the history of the legislation, and other statutes in pari materia. State v. McCarthy, 123 N.J. Super. 513 (1973).
This principle of statutory construction should apply to the Sunshine Law which clearly expresses its intent to "establish a firm and general philosophy of maximum possible disclosure of government information unless such information is otherwise exempt clearly under the law." New Jersey's Right to Know: A Report on Open Government (1974). The application of the aforementioned principle of statutory construction to the Sunshine Law calls for the conclusion that the Sunshine Law should not be substantially modified by a subsequent statute (The Municipal Land Use Act), which is directed primarily to coordinate and standardize land use bodies procedures and activities unless the modification is expressly stated or the intent of the Legislature in adopting the subsequent statute is clear and compelling.
There is no express mention in the Municipal Land Use Act of the Legislature's intent to modify the Sunshine Law's main purpose which requires public bodies to conduct open public meetings, nor is there any clear and compelling evidence which implies the Legislature's intent to modify the Sunshine Law with N.J.S.A. 40:55D-9(b).
The source of N.J.S.A. 40:55D-9 is R.S. 40:55-38. This statute provides in pertinent part: "Meetings of the board shall be held at the call of the chairman and at such other times as the board may determine, and shall be open to the public. * * *" (Emphasis supplied).
The statement appended to the Municipal Land Use Act indicates six primary concerns of the bill. They are as follows: (1) simplifying and standardizing existing requirements and procedures; (2) achieving better integrated planning and speedier regulatory processes; (3) providing a clearer statement of the objectives of land use planning and regulation and specifying standards therefor; (4) providing a clearer delineation of the respective responsibilities of *547 municipal bodies or officials and developers in the planning and regulatory processes and the setting out of precise time frames for the actions of such actors and interested parties; (5) eliminating some of the procedural confusion resulting from existing overlaps in jurisdiction, and (6) clarifying several ambiguities in the present law by incorporating pertinent judicial decisions thereon or on other procedural requirements.
The appended statement indicates that the League of Municipalities had prepared several excellent background materials on the bill. One such report was a comparative summary of the pertinent provisions of the bill and how they differ from the present law. While 27 major changes are indicated, no mention is made of a revision of the Sunshine Law as applied to the municipal land use agencies.
As evidenced by the legislative history, there was neither an express nor an implied intent of the Legislature to modify the Sunshine Law by the adoption of N.J.S.A. 40:55D-9(b). The primary purpose of the Municipal Land Use Act was to uniformly organize the municipal agencies throughout the State and to establish standards and efficient procedures of land use regulation and planning. That act was never intended to deal with the deliberative aspects of public bodies as was the Sunshine Law.
The procedural history of the passage of the two acts is also significant. The Land Use bill was introduced in the Senate prior to the submission of the Assembly's bill on the Sunshine Law. The Sunshine bill was passed by the Senate on July 14, 1975, only a few weeks after the Land Use bill was passed by the Senate for the first time and some six months prior to the Senate's final passage of the Land Use bill as amended by the Assembly. The Assembly gave its final approval to the Sunshine bill on July 30, 1975, and almost six months later, on December 15, 1975, it passed the Land Use bill. The implication derived from the passage of the two bills almost simultaneously is that neither the Senate nor the Assembly intended N.J.S.A. 40:55D-9(b) *548 to delineate an additional exception to the Sunshine Law. This implication is drawn from the fact that the Sunshine Law clearly limits the exceptions to open public meetings to those enumerated; that the Sunshine bill was introduced to the Senate after the Land Use bill was drawn up and that both the Senate and Assembly had the opportunity to include N.J.S.A. 40:55D-9(b) as an additional exception to the Sunshine Law, yet both the Assembly and Senate failed to do so.
A prime sponsor of the Sunshine Act, Assemblyman Byron M. Baer, has filed an affidavit on behalf of intervenor Common Cause which supports the proposition that the Land Use Law does not and was not intended to in any way modify the Sunshine Act. In fact, he indicates that "the language of the land use law was drafted before adoption of the Sunshine Act, and at none of the Legislature's Committee or floor deliberations or hearings of the land use law which I attended, and in no record of such meetings that I have reviewed, did any legislator discuss modifying the Sunshine Act, nor did any other party submit positions or materials discussing such a possibility." Based upon the above facts this court can only conclude that N.J.S.A. 40:55D-9(b) was not intended to supplement the exceptions listed in N.J.S.A. 10:4-12(b).
The Sunshine Law and the Municipal Land Use Act both deal with public meetings before land use agencies. When considering statutes related to the same subject matter, although some may be general and some special, it is the court's duty to construe them in harmony and as a unit insofar as is possible, in order that each may be given full effect. Clifton v. Passaic Cty. Taxation Bd., 28 N.J. 411, 421 (1958). The language in N.J.S.A. 40:55D-9(b), which sanctions private executive sessions for discussing and studying matters which may come before a land use agency, can be reconciled with N.J.S.A. 10:4-12(b).
The matters which may be discussed privately in executive sessions under N.J.S.A. 40:55D-9(b) refers *549 to procedural preliminaries which the land use agency considers. For example, the agency may consider whether an applicant has complied with applicable municipal or state statutes, whether any member of the land use agency may possibly be disqualified concerning a specific application, or whether there are any laws or facts with which agency members should familiarize themselves.
Avalon board's contention that it may deliberate in private on the merits of an application is not condoned by N.J.S.A. 40:55D-9(b). The second sentence of N.J.S.A. 40:55D-9(b) allows an executive session "for the purpose of discussing and studying any matters to come before the agency. * * *" (Emphasis supplied). The general meaning of this sentence is that the executive session exception applies to procedural and legal considerations, and not to substantive questions before the board for hearing and decision. Additionally, N.J.S.A. 40:55D-9(b) states that an executive session is not a regular meeting or special meeting where the public is allowed, and therefore there cannot be an executive session at a regular or special meeting where the public is present. Finally, an executive session may be held only to discuss and study permitted matters since there is no language allowing decision making at such sessions.
Based upon the aforementioned reasons, I find that Avalon board has violated the Sunshine Law by excluding the public from its discussions and evaluations of matters which involve neither pending nor anticipated litigation nor legal matters protected by the attorney-client privilege. I hold that the determinations made by the Avalon and North Wildwood boards in the cases presently before the court were made in contravention of the Sunshine Law as interpreted above and are therefore void. N.J.S.A. 10:4-15. I further hold that all void actions must be reconsidered by the Avalon board in accordance with the Sunshine Law, at an open public meeting. Just as plants need sunshine to grow and be healthy so, too, does the public need "sunshine." The "sunshine" *550 which N.J.S.A. 10:4-6 et seq. provides allows the public to grow aware of what action its public bodies are taking, which in turn creates a healthy public attitude of faith and trust in the democratic process generally and in the decisions made by public bodies specifically. A day with a closed meeting is like a day without "sunshine." Continuous days without "sunshine" cause the tree of democracy to wither and die.