RAYMOND DELLA SERRA, PLAINTIFF, v. BOROUGH OF MOUNTAINSIDE; THOMAS A. RICCIARDI, MAYOR; COUNCIL PEOPLE ABRAHAM SUCKNO, RONALD ROMACK, ROBERT VIGILANTE, MARILYN HART, LOUIS MAAS; AND WERNER SCHON, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided January 18, 1983.

136

*William L'E. Wertheimer* for plaintiff (*Lum, Biunno & Tompkins,* attorneys; *Thomas F. Quinn* on the brief).

*David A. Wallace* for defendants and on the brief.

FELLER, J.S.C. (retired and temporarily assigned on recall).

The issue here is whether defendants Mountainside Borough *et al.* violated the so-called "Sunshine Law" of *N.J.S.A.* 10:4–6 *et seq.* when they participated in private deliberations concerning the disciplinary complaint against plaintiff Sergeant Della Serra. The case comes before the court on motion and cross-motion for summary judgment.

The "Sunshine Law," entitled the "Open Public Meetings Act," had the following enunciated "Legislative findings and declaration":

... the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to the enhancement and proper functioning of the democratic process; that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society, and hereby declares it to be the public policy of this State to insure the right of its citizens to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way except only in those circumstances where otherwise the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion. [*N.J.S.A.* 10:4-7]

The general rule is stated in *N.J.S.A.* 10:4-12 a, that "all meetings of public bodies shall be open to the public at all times." Exclusion of the public is permitted under certain circumstances, *N.J.S.A.* 10:4-12 b, the pertinent exceptions to the instant case being:

(8) Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, *unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting.*

(9) *Any deliberations of a public body occurring after a public hearing that may result in the imposition of a specific civil penalty* upon the responding party or the suspension or loss of a license or permit [Emphasis added].

These statutes have been liberally construed to favor "public involvement in almost every aspect of government," (*N.J.S.A.* 10:4-21), *Polillo v. Deane,* 74 *N.J.* 562, 569 (1977), and the exceptions have been narrowly construed, *Rice v. Union Cty. Reg'l High School Bd. of Ed.,* 155 *N.J.Super.* 64, 70 (App.Div. 1977), certif. den. 76 *N.J.* 238 (1978); *Accardi v. Wildwood,* 145 *N.J.Super.* 532, 545 (Law Div.1976).

▮ Disciplinary hearings are obviously "meetings of public bodies" which are controlled by the Open Public Meetings Act, *N.J.S.A.* 10:4-12 a; 10:4-8 a. Any private meetings must be

valid under an exception, or the action taken, if not cured, is voidable. *N.J.S.A.* 10:4–15.

█ Plaintiff argues, and this court agrees, that the instant private sessions are not valid under exception 12 b(8). Plaintiff requested in writing that his case be discussed in public. Therefore, under the 12 b(8) exception, no private deliberations could occur.

Defendant argues, however, that the exception in 12 b(9) is applicable, and permits private sessions for the purpose of deliberations after a public hearing when the result may be "the imposition of a specific civil penalty."

Plaintiff argues that this exception is specifically directed at penalties resulting in suspension of licenses or permits. The actual language of the exception states: "the imposition of a specific civil penalty ... *or* the suspension or loss of a license or permit" (emphasis added). Thus, a civil penalty or action on a license would seem to trigger this exception. But, if private deliberations by a public body can occur anytime a civil penalty may result, what happens to the purposes behind the Open Public Meetings Law? And what happens to the protection afforded to public employees who have the right to insist on open meetings when their employment is being deliberated under 12 b(8)? How are these two exceptions to be reconciled?

It is a fundamental principle that

In construing the enactment we must give effect to the overriding plan or purpose of the Legislature as fairly expressed in its language. We may freely look to its history for whatever aide it may furnish in ascertaining the true sense and meaning of the legislative terminology. And we must seek to avoid an interpretation that will render any part of the enactment "inoperative, superfluous or meaningless." [*O'Rourke v. Board of Review,* 24 *N.J.* 607, 610–11 (1957); citations omitted]

The statute was introduced as Assembly Bill 1030 by Assemblyman Baer in January 1974 in which six exceptions to the open meeting rule were suggested. The only exceptions subsequently adopted which were not listed in the initial bill are subsections 12 b(7) (private meetings for anticipated litigation or contract

negotiations) and 12 b(9). Little discussion on the 12 b(9)
exception occurred. In fact, reference to licenses appear only
twice during the legislative hearings on the bill. The first
instance was an exchange between Mr. Ripps, a lawyer for
Common Cause, and Assemblyman Doyle:

ASSEMBLYMAN DOYLE: In a number of governing bodies the awards of
certain licenses, particularly liquor licenses, do you think they should be contin-
ued to be private or should they be made public too?

MR. RIPPS: I see no reason why they shouldn't be made public. [Public
Hearing on A–1030, at 96 (1974)]

The second instance in which licenses were mentioned sheds a
little more light on the legislative purpose. In a colloquy
between Assemblyman Hawkins and Vice-President Bort of the
New Jersey Institute of Municipal Attorneys, the following was
stated:

MR. BORT: Let me give you an example, sir. Every municipality has ordi-
nances requiring permits or licenses. We have one that every person apply for a
taxi, the driver's license has to be investigated by the police.

We had a case not too long ago where the police chief came back with what is
called a rap sheet. This particular person had been convicted of atrocious
assault and battery. Now, the question is: shall we issue a license to such a
person to drive a taxi?

The council in executive session conference meeting, said, "Let's call him, let's
see what he looks like, let's talk with him." We did that. He appeared to be a
person who had an impeccable record otherwise, but he admitted, yes, some eight
or ten years ago, while a youngster, he had been in a fight and in self-defense
picked up an object, had injured the person he was fighting with and was
convicted.

ASSEMBLYMAN HAWKINS: That's a very good point. What I think you're
trying to say is that in deliberations with confidentially [sic] information you
think it should not be opened.

MR. BORT: Yes, certainly. [Public Hearings on A–1030, at 177–78 (1974).]

As indicated by this conversation, the apparent purpose be-
hind the 12 b(9) exception is to protect individuals like the taxi
driver when "confidential" information is going to be revealed
at a meeting. This is similar to the underlying rationale behind
the 12 b(3) exception pertaining to disclosures "which constitute
an unwarranted invasion of individual privacy," and the 12 b(8)
exception. These three exceptions are clearly attempts by the
Legislature to protect privacy interests. This goal is consistent

with the legislative findings in *N.J.S.A.* 10:4–7 which base all exceptions to the general rule on two rationales: "where . . . the public interest would be clearly endangered or where the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion." Exceptions 12 b(3) and 12 b(8) both include the proviso that the individual whose privacy interests are at stake may request a public hearing. However, 12 b(9) has no such clause. That this was inadvertent is evidenced by examining the Sunshine Laws of other states.

Every state has an Open Meeting Law. See Note, "New Jersey's Open Public Meetings Act: Has Five Years Brought Sunshine to the Garden State?" 12 *Rutg.-Camd.L.J.* 561, n. 4. Of the 50 states, only five besides New Jersey specifically provide a "licensee exception" to the general rule of public meetings. These states are Iowa, *Code Ann.* § 28A.5(1)(d); N.M., *Stat.Ann.* § 10–15–1(E); Ohio, *Rev.Code Ann.* § 121.-22(G)(1); W.Va., *Code* § 6–9A–4(4), and *Wis., Stat.Ann.* § 19.-85(1)(b). Of these five states only Iowa does not allow the licensee to request an open meeting, and Iowa is at least consistent in this respect because it also does not allow public employees who are to be discharged to request a public meeting. The court in *Accardi, supra,* said:

> . . . legislation must be accorded a rational interpretation consistent with its manifest purpose. *State v. Link,* 14 *N.J.* 446 (1954). Particular words of a statute are to be made responsive to the reason and spirit of the entire enactment. *Sperry & Hutchinson Co. v. Margetts,* 15 *N.J.* 203 (1954). Statutes *in pari materia* are construed as one act and the whole harmonized if possible. *Modern Industrial Bank v. Taub,* 134 *N.J.L.* 260 (E. & A.1946). Different statutes *in pari materia,* though enacted at different times, and not referring to each other, should be construed together as one system and as explanatory of each other. *Commercial Trust Co. of N.J. v. Adelung,* 137 *N.J.Eq.* 541 (E. & A. 1945). Most certainly a court, in expounding a statute, must not be guided by a single sentence or part of a sentence, but must look to the provisions of the whole statute and to its object and policy. *Ideal Farms, Inc. v. Benson,* 288 F.2d 608 (1961) *cert. den.* 372 U.S. 965, 83 S.Ct. 1087, 10 L.Ed.2d, 128 (1961). Statutory interpretations which lead to absurd or unreasonable results are to be avoided. *State v. Gill,* 47 *N.J.* 441 (1966). An interpretation which renders any part of a statute ineffective should be avoided. *State v. Congdon,* 76 *N.J.Super.* 493 (App.Div.1962). [145 *N.J.Super.* at 545]

■ It is consistent with the legislative goals and purposes of the Open Public Meetings Law, and the court now holds, that exception 12 b(9) must be interpreted to be subject to the limitation of the other privacy exceptions. The individual whose privacy is threatened must have the right to request in writing that the matters be discussed at a public meeting.

In interpreting the statute in this manner the court is aware of the interdiction against judicial legislation. *Sabato v. Sabato,* 135 *N.J.Super.* 158 (Law Div.1967); *Brick Tp. v. Spivak,* 95 *N.J.Super.* 401 (App.Div.1967), aff'd 49 *N.J.* 400 (1967). However, it is the opinion of this court that such an interpretation does not rewrite the law but merely effects the purposes set out in the act itself—to make the workings of government public whenever possible. In light of the legislative intent it is unreasonable for an individual whose privacy is protected by 12 b(9) to be unable to waive that protection. It must be remembered that it is the individual who is being protected in the 12 b(9) exception, not the public body.

Thus, even if 12 b(9) is applicable to the instant situation, plaintiff's request in writing for a public hearing should have been honored by defendants.

■ Another issue raised by the parties is which exception should control the instant case. A pamphlet prepared by the State of New Jersey, "Guidelines on the Open Public Meetings Law" was sent to all municipalities and reprinted in 98 *N.J.L.J.* 1081 (1975). It stated:

> May a public body hold a closed session on a matter which falls within one of the exceptions to the Open Public Meetings Law if another statute requires it to be held in public session?
>
> Ans: No. Even if a matter falls within one of the exceptions to the Open Public Meetings Law, it may not be discussed or acted upon in closed session if another statute requires that specific matter to be discussed or acted upon in open session. [*Id.* at 1095]

In the present case another "statute" requires public discussion, *i.e., N.J.S.A.* 10:4–12 b(8). Therefore, plaintiff's rights to have his private matters discussed in public would override a municipality's rights to a private hearing under *N.J.S.A.* 10:4–12 b(9).

■ Furthermore, exception 12 b(8) specifically refers to "Any matters involving ... employment." Exception 12 b(9) refers to any deliberations which result in civil penalties or license suspensions and revocations. Certainly, when the case involves employment, the employment exception should control. To suggest that the protection granted to an employee to have private deliberations or public disclosure at the employee's discretion can be removed by shifting to another, more general exception is to defy the obvious intent of the Legislature. Specific provisions must prevail over general provisions. *State v. Masnik,* 125 *N.J.L.* 34 (1940). This point is now moot since the same right to request public disclosure has been applied to the 12 b(9) exception.

■ Defendants also argue that their violation, if any, was cured by subsequent public hearings. This court is unconvinced. Our Supreme Court has stated: "Strict adherence to the letter of the law is required in considering whether a violation of the Act occurred." *Polillo, supra,* 74 *N.J.* at 578. In that case many sessions which violated the notice provisions of the act were followed by two, final sessions which conformed to the act. The court held that substantial compliance with the act was insufficient to uphold the validity of the actions by the public body.

*N.J.S.A.* 10:4–15 a provides for the curing of a voidable proceeding "by acting *de novo* at a public meeting held in conformity with this Act." However, the *Polillo* court did not believe that two meetings in conformity were sufficient to "constitute a '*de novo*' reaffirmation of the activities which had transpired at the previous meetings." 74 *N.J.* at 578.

*N.J.S.A.* 10:4–16 grants the court authority to "provide such remedies as shall be necessary to insure compliance with the provisions of this Act." The *Polillo* court interpreted that statute in conjunction with *N.J.S.A.* 10:4–15 a as "remedial statutory sections [which] contemplate maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official busi-

ness." 74 *N.J.* at 579. Substantial compliance, therefore, is important in determining the remedy and relief. *Id.*

The purpose of the Open Public Meetings Act is to provide government by the people, prevent corruption, *Polillo, supra,* 74 *N.J.* at 571, and promote public confidence. *Accardi, supra,* 145 *N.J.Super.* at 541. Had defendants complied with the requirements of the act, charges of political maneuvering and personal animosity would have been avoided. That is what the act is designed to do. But, by holding private deliberations defendants invited these charges, despite the assertion in their resolution that these private deliberations were calculated to produce the fullest and fairest decision.

Plaintiff has argued that private deliberations cannot be cured. However, under these circumstances, this court believes it is unnecessary and wasteful to void the entire proceedings, including the public meetings which conformed to the act and in which evidence was presented. Those public meetings prior to the November 13, 1982 private meeting are declared valid.

However, the November 13 deliberations violated the Open Public Meetings Act and are void. The November 23 public meeting did not cure the violation and that meeting is also declared void. The governing body is directed to conduct new deliberations in public, as required by 12 b(8).

This court is cognizant of plaintiff's argument that the council members have been prejudiced against plaintiff by these court proceedings. Although the court does not pass judgment on these allegations, this court retains jurisdiction over this matter.

Therefore, for the reasons set out above this court holds:

1. The action by defendants discharging plaintiff is void.
2. All subsequent actions concerning public employment are governed by *N.J.S.A.* 10:4–12 b(8).
3. Even if the exception *N.J.S.A.* 10:4–12 b(9) controls, it is to be interpreted as permitting the individual concerned to waive the private deliberations by requesting in writing that the deliberations be conducted in public.
4. The public meetings prior to November 13, 1982 are valid.
5. The private deliberations meeting of November 13, 1982 is void.

6. The public meeting of November 23, 1982 is void.

7. The temporary restraints will continue pending a final determination by defendants, to be made within 60 days of the date of the judgment.

8. Plaintiff's motion for summary judgment is granted in part.

9. Defendants' cross-motion for summary judgment is denied.

10. This court will retain jurisdiction over this matter.