RAYMOND DELLA SERRA, PLAINTIFF-RESPONDENT, CROSS-APPELLANT, v. BOROUGH OF MOUNTAINSIDE, THOMAS A. RICCIARDI, MAYOR; COUNCIL PEOPLE ABRAHAM SUCKNO, RONALD ROMACK, ROBERT VIGILANTE, MARILYN HART, LOUIS MAAS, AND WERNER SCHON, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 10, 1984—Decided February 28, 1984.

Before Judges MICHELS, KING and DREIER.

*Frederic K. Becker* argued the cause for appellant (*Wilentz, Goldman & Spitzer,* attorneys; *Frederic K. Becker* and *Christine D. Petruzzell,* on the brief).

*William L'E. Wertheimer* argued the cause for respondents (*Tompkins, McGuire & Wackenfeld,* attorneys; *Thomas F. Quinn,* on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, filed a brief amicus curiae (*James J. Ciancia,* Assistant Attorney General, of counsel; *Bertram P. Goltz, Jr.,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

KING, J.A.D.

The principal issue here is whether the defendants, the Borough of Mountainside's Mayor and Council, violated the Open Public Meetings Act, *N.J.S.A.* 10:4–6 *et seq., L.* 1975, *c.* 231, frequently called the "Sunshine Law", when they participated in private deliberations on the disciplinary complaints against plaintiff, Raymond Della Serra, a police sergeant. On cross-motions for summary judgment, the Law Division judge held that the Mayor and Council violated the Act and he voided their deliberations. 188 *N.J.Super.* 134 (Law Div.1983). We respectfully disagree with the Law Division judge on this close question of statutory interpretation and we reverse. We also conclude that the municipal attorney was not disqualified by a conflict of interest and affirm on the cross-appeal.

I

The Act requires that meetings of public bodies be open to the public, with the exception of specifically exempted proceedings. *N.J.S.A.* 10:4–12. These nine exemptions include such matters as: legally confidential situations, the privacy of personal data, collective bargaining negotiations, purchase and investment information and decisions, sensitive public safety data, pending litigation, contract negotiations, employment, and certain deliberations following a public hearing. The issue here is whether the exemption of deliberations in subsection (b)(9) applies to deliberations relating to the discipline of a police officer after he has waived his right to have his subsection (b)(8) disciplinary hearing held in private and has opted for a public disciplinary hearing. As noted, the Law Division judge held that the police officer, in addition to a public hearing, had the legal right to public deliberations concerning any penalty upon a "request in writing that such matter or matters be discussed at a public meeting." *N.J.S.A.* 10:4–12(b)(8). We disagree.

The pertinent statutory framework is

a. Except as provided by subsection b. of this section all meetings of public bodies shall be open to the public at all times. Nothing in this act shall be construed to limit the discretion of a public body to permit, prohibit or regulate the active participation of the public at any meeting.

b. A public body may exclude the public only from that portion of a meeting at which the public body discusses:

\* \* \* \* \* \* \* \*

(8) Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting.

(9) Any deliberations of a public body occurring after a public hearing that may result in the imposition of a specific civil penalty upon the responding party or the suspension or loss of a license or permit belonging to the responding party as a result of an act or omission for which the responding party bears responsibility.

[*N.J.S.A.* 10:4–12].

By resolution of October 19, 1982 the Borough officials decided to conduct deliberations in this disciplinary proceeding in private. They wished to proceed "in such fashion as will produce the fullest and fairest decisions for both [parties]."

 The possible sanctions against the plaintiff are set out in *N.J.S.A.* 40A:14–147. They include suspension, discharge, imposition of a monetary fine, and reduction in rank. A fine is obviously a civil penalty. *See* discussion at *Philadelphia v. Smith,* 82 *N.J.* 429, 433 (1980); *Philadelphia v. Austin,* 171 *N.J.Super.* 118, 120–122 (Dist.Ct.1979), aff'd 86 *N.J.* 55 (1981). The alternate sanctions to a fine are also civil penalties, more severe than a fine, and obviously not criminal sanctions. The penalty imposed on plaintiff was discharge.

True, the Act's express "legislative findings and declaration," *N.J.S.A.* 10:4–7, clearly recognize the right of the public to be present at all meetings of public bodies and "to witness in detail all phases of the deliberation, policy formulation, and decision making of public bodies" except where exempted in "the public

interest." Thus the policy of full disclosure was not all-embracing but yielded to certain statutory exceptions.

The personnel exception to "government under glass", *N.J.S.A.* 10:4–12(b)(8), expressly permits discussion of personnel matters at public meetings, upon waiver by the employee. But subsection (b)(8) nowhere speaks of how "deliberations" are to be conducted. Thus, in respect of the conduct of "deliberations," subsection (b)(8) must yield to the more specific exemption in subsection (b)(9) which permits deliberations in executive session where a civil penalty is contemplated.

We read *N.J.S.A.* 10:4–12(b)(9) against the background of the enactment of the legislation as exempting the quasi-judicial deliberations of a governing body when, as here, it decides the fate of the career of a public employee. Nothing in our traditions, the wording of the Act, or the legislative history suggests otherwise.

The "deliberations" exception in subsection (b)(9) originally was not part of Assembly Bill 1030, which ultimately became the Sunshine Law. *See* the Law Division opinion, 188 *N.J.Super.* at 138–139. The "deliberations" exception was added by an Assembly Committee amendment on October 29, 1974. This amendment was adopted after public hearings on March 14, 1974 at which members of the public, as well as Assemblyman Karcher, one of the sponsors, expressed recognition that quasi-judicial deliberations of administrative bodies differed from typical administrative or legislative functions and were more effectively held in private. *See* Public Hearings Before Assembly Judiciary Committee on A–1030 (1974) at 23–2 to 24–21; 92–3 to 93–9. "One of the most readily available extrinsic aids to the interpretation of statutes is the action of the legislature on amendments which are proposed to be made to a bill during the course of its consideration in the legislature." 2A *Sutherland, Statutory Construction* (3rd ed. 1973), § 48.18 at 224.

A further guide to understanding the exemption in subsection (b)(9) for "deliberations" is found in a pamphlet prepared by the

Office of the Governor and circulated by the Secretary of State to affected sectors of government prior to the Act's effective date titled: "Guidelines on the Open Public Meetings Law." The preamble states that "the following questions and answers have been prepared to acquaint those affected by the ... Law with some of its requirements." In discussing "executive or closed sessions" this appears

What are the exceptions to the requirement that a public body hold its meetings in public?

\* \* \* \* \* \* \* \*

12. Quasi-judicial deliberations occurring after a public hearing that may result in the imposition of a civil penalty or the suspension or loss of a license or permit (§ 7b9).

This official publication, promulgated contemporaneously with the Act, also is a helpful guide to legislative intent. "We recognize fully that resort may be had to contemporaneous and practical constructions for whatever aid they may fairly afford in ascertaining the true sense and meaning of constitutional and statutory provisions." *Lloyd v. Vermeulen,* 22 *N.J.* 200, 210 (1956) (Jacobs, J.) cited in 2A *Sutherland, supra,* § 49.03 at 223 n. 1; *see also Accardi v. Mayor & Council of N. Wildwood,* 145 *N.J.Super.* 532, 541 (Law Div.1976), where Judge Gruccio relied on the "Guidelines" pamphlet in construing the exceptions to the Open Public Meetings Act.

▪ We reject the Law Division's implication of a waiver clause in subsection (b)(9). The implication of such clause into the statute connotes judicial legislation. *See Hoffman v. Hock,* 8 *N.J.* 397, 409 (1952); *Bd. of Ed. of Vocational School of Union Cty. v. Finne,* 88 *N.J.Super.* 91, 111 (Law Div.1965). We cannot presume legislative inadvertence, especially in an act which obviously commanded careful consideration and close study before adoption.

▪ In the result we reach, the disciplinary hearing where all relevant facts and arguments are presented is still open to the public. Disclosure of the basis for the deliberating body's decision must and should be available to the public. The

publicly-announced decision on the 30 charges against plaintiff in this case consumes 28 double-spaced pages of our appendix and details the reasons for the findings reached after the eight hours of deliberations leading to the penalty of removal.

Here the governing body functioned during its deliberations on the charges against plaintiff as an adjudicatory body in a quasi-judicial matter. The analogy to the judicial role is clear. *Vicoa, Inc. v. Director, Div. of Taxation*, 166 *N.J.Super.* 496, 503 (App.Div.1979). *Cf. Accardi v. Mayor & Council of N. Wildwood*, 145 *N.J.Super.* at 532 (deliberations of zoning board on variance applications open to public; no specific civil penalty involved). Other jurisdictions have reached the result we reach here under their open public meetings statutes. *See Flagstaff v. Bleeker*, 123 *Ariz.* 436, 600 *P.*2d 49 (Ct.App.1979); *Bell v. Bd. of Ed.*, 557 *S.W.*2d 433 (Ky.Ct.App.1977); *see also Jordan v. District of Columbia*, 362 *A.*2d 114 (D.C.Ct.App.1976).

As the Attorney General states in his *amicus* brief urging reversal, the Open Public Meetings Act represents a careful legislative balancing between competing interests: to allow the public to observe governmental bodies at work and to recognize the need for these bodies in the public interest to, at times, function privately. The burden of adjudicating guilt and consequent imposition of a civil penalty or license revocation can be very serious, as in the present case. This burden of deliberation can be unwisely intensified and inhibited if thrust into the public eye with every step in the deliberative process potentially etched in news print or taped for display on the evening television news.

We are impressed by the philosophy and reasoning of the dissent in a case decided by the Florida Supreme Court. In *Canney v. Bd. of Pub. Instruction of Alachua Cty.*, 278 *So.*2d 260 (Fla.Sup.Ct.1973), the court ruled 4–3 against implying an exemption for quasi-judicial deliberations to that state's "sun-

shine law" where, unlike the New Jersey enactment, none was expressed in the act. The dissent said

The regular activities of an agency and those which are quasi-judicial are altogether different. Those rights of persons and property involved in a hearing should be preserved in a judicial atmosphere which is essential to a fair and impartial deliberation upon the rights involved. To afford less in such a judicial type of proceeding would be a denial of due process and of a fair hearing in which a person's rights and interests are at stake, as much as if he were before a judicial tribunal. We might as well return to the Roman Arena for a "thumbs up or thumbs down" result by the public clamor if we are to eliminate the judicial protections and safeguards in matters of this kind.

\* \* \* \* \* \* \* \*

The result of depriving an administrative body of free deliberation among themselves, just as a regular judicial body or jury may do, is to shut off the free flow of discussion among them and an exchange of ideas and an open discussion of differing views to the end that a fair and just result may be reached by the body based upon the evidence and arguments at the hearing. Ask any juror. The answer will be that the free interchange and discussion among the group is essential to a fair and just conclusion of the interests before them for decision. This is not the area in which one need fear the alleged "private deals" and extraneous considerations to the matter at hand, so that really the asserted reason undergirding the sunshine law is not present in a judicial deliberation of a matter before an administrative board for a review of judicial character. The basic concept of the "right of the public to know" is fulfilled upon reaching such a fair and just result which is then publicly conveyed.

[*Id.* at 264–265].

See also *Jordan v. District of Columbia,* 362 A.2d at 119.

## II

On the cross-appeal we reject plaintiff's contention that the service of David A. Wallace, Esquire, as legal advisor to the Borough presented a conflict of interest voiding the proceedings. Wallace had also served as specially-retained counsel to the Borough in labor negotiations with the Patrolmen's Benevolent Association. Plaintiff relies primarily on our Supreme Court's decision in *Perillo v. Advisory Committee on Professional Ethics,* 83 *N.J.* 366 (1980), to support his claim. Plaintiff's contention is without merit and unsupported by the Court's decision in *Perillo.*

In *Perillo*, the Court held that it is unethical for a municipal attorney to become engaged on behalf of the municipality in an adversarial or judicial proceeding directed against a police officer employed by the same municipality

> ... where there is an adequate basis for a belief on the part of members of the public reasonably familiar with municipal affairs that municipal police officers and municipal attorneys have worked together so closely and regularly that they could not be drawn into adversarial positions in later administrative and judicial proceedings without fostering the appearance of a conflict of interest. [*Perillo*, 83 *N.J.* at 377–378].

The Court's holding was based on the appearance of impropriety that might be created in the eyes of the public where members of the "same team" are pitted against one another. *Id.* at 376–377. The *Perillo* Court was concerned that "where a municipal attorney has worked closely with the police on a regular basis" the public may reasonably believe that the attorney may have "divided allegiance" and not vigorously prosecute the charged police officer. *Id.* at 376.

Wallace's role as Borough counsel in labor negotiations with the Policemen's Benevolent Association would not cause a reasonable person to perceive the appearance of a conflict of interest. Wallace did not work closely with police on a regular basis so as to give rise to an inference that he had divided loyalties that affected his commitment in the instant matter. Wallace's only other contact with the police force was adverse, and was in the narrow area of labor negotiations.

In addition, Wallace's limited role as special labor counsel to the Borough brings him within the exception recognized in *Perillo* for attorneys who have "had only irregular or occasional dealings with the police." *Id.* at 377.

We reverse the decision of the Law Division insofar as it held the private deliberations meeting of November 13, 1982 void. On the cross-appeal, we affirm the decision of the Law Division judge.