In the Matter of the Appeal of the ORDER DECLARING ANNEXATION DATED JUNE 28, 1978, ISSUED BY Gene FRAZIER, the Acting County Superintendent of Schools of Washington County, Oklahoma.

No. 53367.

Court of Appeals of Oklahoma, Division No. 1.

Aug. 18, 1981.

Rehearing Denied Oct. 6, 1981.

Released for Publication by Order of Court of Appeals Dec. 18, 1981.

Rebecca L. Adams, Sand Springs, for appellants, Duane Benbrook, et al., petitioners.

Daniel Bassett, Bartlesville, for appellee, Washington County Independent School Dist. 18.

Willard Boone, Asst. Dist. Atty., Bartlesville, for appellant, Gene Frazier, Acting County Superintendent of Washington County, Oklahoma.

WILSON, Judge:

This case involves Oklahoma's Open Meeting Act, 25 O.S.Supp.1977, §§ 301–314, popularly known as the Sunshine Law. Our main task is to consider the effect of Open Meeting Act violations on actions of district boards of education and school officials in relation to a school annexation. Specifically, we are asked to interpret and apply § 313 of the Act, providing that "[a]ny action taken in willful violation of this act shall be invalid."

## I. THE FACTS

Like many another rural school, Oglesby District School, grades kindergarten—8th, found its days were numbered. Following the defeat of two mill levy elections, it was plain it would have to close its doors. A heated local debate arose over where the Oglesby children would go to school. One vocal faction, comprised largely of those who worked in and lived just outside nearby Bartlesville, favored that city's sophisticated school system. Other folks found the smaller Caney Valley system more convenient and more suited to their tastes.

Members of the soon-to-be-defunct Oglesby District School Board went into a flurry of activity, conducting meetings and consulting with State Education Department officials, including Gene Frazier who was serving as acting County School Superintendent. The goal was to effect a voluntary annexation under 70 O.S.Supp.1977, § 7–101. A preference poll was taken and a line drawn on a map dividing the district between Caney Valley and Bartlesville, both adjoining the Oglesby district. When this plan was submitted to the school boards of those two districts, however, Bartlesville disagreed with the way the line was drawn.

At that point, instead of adjusting the line, the Oglesby Board decided it might as well just send all the kids to Caney Valley and be done with it. The Board passed an annexation resolution to that effect, the Caney Valley Board concurred, and acting Superintendent Frazier called for submission of the resolution to a vote of the district electorate. See, 70 O.S.Supp.1977, § 7–101. Predictably, this course caused an uproar from the group favoring Bartlesville, some of whom lived upwards of twenty and twenty-five miles from Caney Valley and only a mile or two from Bartlesville. They tried to enjoin the election on grounds that the Oglesby and Caney Valley School

Boards had violated the Open Meeting Act and that Superintendent Frazier had violated a duty to insure the resolution was legal, but the attempt was unsuccessful. The resolution was voted on and approved by a narrow margin. Superintendent Frazier then declared the annexation of the entire Oglesby district by Caney Valley.

Again, the Bartlesville group went to court, seeking nullification of the annexation order on the grounds advanced in their previous injunction action and also making allegations of election hanky-panky. From the denial of their petition for nullification, the disgruntled electors appeal.

## II. APPLICABILITY OF THE OPEN MEETING ACT—A THRESHOLD ISSUE

Apart from a few narrowly prescribed exceptions, the Open Meeting Act applies to "all meetings" of "public bodies." 25 O.S. Supp.1977, § 303. Section 304 broadly defines "meeting" as "the conducting of business of a public body by a majority of its members being personally together." "Public body" is also broadly defined in § 304 and expressly includes boards of education.

Appellee school board and acting county Superintendent assert that the actions here were not all taken at real "meetings," but we find no merit in this assertion considering the Act's broad definition of "meeting" and considering that § 306 prevents the use of "informal gatherings" to circumvent the Act. As held in *Times Publishing Company v. Williams*, 222 So.2d 470 (Fla.App.1969), Sunshine legislation reaches, not just "formal" meetings, but the "entire decision-making process."

Appellee Frazier also asserts that he is not a "public body." We, however, do not believe that the presence of an individual official at meetings of covered public bodies takes those meetings beyond the reach of the Sunshine Law. Recently in *The Internat'l Ass'n of Firefighters, Local 2479 v.*

*Thorpe*, 632 P.2d 408 (Okl.1981), the Oklahoma Supreme Court disagreed with Attorney General's Opinion 77–260 which stated that a city manager was not a "public body" and thus meetings between the manager and employee representatives were not within the scope of the Open Meeting Act. Though the matter was not dispositive, the Court wrote that the 1977 Attorney General's opinion "erroneously failed to consider the private individuals who were involved in the bargaining process."

Besides, the electors' theory in this case was not that Superintendent Frazier was a "public body" but that he should have considered whether the resolution was passed at a legal meeting before calling for the election and declaring the annexation. We do not think this case turns on whether the Superintendent was acting as a "public body" but rather find that he was a proper party since his actions were required to give effect the actions taken by the two school boards involved.

We conclude that the Open Meeting Act applies to the present case.

## III. WERE THERE VIOLATIONS?

Appellants, the dissatisfied members of the Oglesby District electorate, cite numerous provisions of the Act which they contend were violated. We need go no farther than the mandatory notice and agenda requirements of 25 O.S.Supp.1977, §§ 303 and 311. Section 303 provides in pertinent part:

All meetings of such public bodies shall be preceded by advance public notice specifying the time and place of each such meeting to be convened as well as the subject matter or matters to be considered at such meeting. . . .

Section 311 details the times when notice must be given for each of the various kinds of meeting covered by the Act. For further discussion of these provisions, as well as an excellent overview of the Act, see Weis, "Oklahoma Open Meeting Act," 49 Okl.B.J. 1515 (1978).

The record in the present case casts very serious doubt on whether timely notice preceded the meetings and leaves no doubt whatsoever that such notice as there was did not meet the agenda requirements of § 303 and § 311. We conclude that the actions leading to and effecting the annexation were taken in violation of the Act.

## IV. THE EFFECT OF VIOLATIONS OF THE OPEN MEETING ACT— WILLFULNESS UNDER § 313

Though we have found no Oklahoma case addressing the effect of Open Meeting Act violations on actions taken, we do find the Oklahoma Supreme Court invalidating actions taken in violation of other statutes. *Oldham v. Drummond Board of Education of Independent School District No. 1–85,* 542 P.2d 1309 (Okl.1975); *Matter of Hickory School District D–3, Murray County,* 454 P.2d 670 (Okl.1969). Moreover, courts in other jurisdictions often hold that Sunshine Law violations, even unintentional ones, even slight ones, render actions taken void or voidable. *Polillo v. Deane,* 74 N.J. 562, 379 A.2d 211 (1977); *Town of Palm Beach v. Gradison,* 296 So.2d 473 (Fla.1974); *Accardi v. Mayor and Council of City of North Wildwood,* 145 N.J.Super. 532, 368 A.2d 416 (1976).

Oklahoma's Open Meeting Act itself provides in 25 O.S.Supp.1977, § 313:

> Any action taken in willful violation of this act *shall be invalid.* (emphasis added)

In interpreting and applying this provision, we must keep in mind the Act's purpose. In the language of § 302:

> It is the public policy of the State of Oklahoma to encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems.

■ Like other legislation enacted for the benefit of the public, open meeting laws are liberally construed to further their goals and favor the public. *The Internat'l Ass'n of Firefighters, Local 2479 v. Thorpe, supra; Arkansas Gazette Co. v. Pickens,* 258 Ark. 69, 522 S.W.2d 350 (1975); *Board of Public Instruction of Broward County v. Doran,* 224 So.2d 693 (Fla.1969); *Accardi v. Mayor, supra.*

Appellees, though, urge us to give no effect to the violations in the case at hand. They argue that the Open Meeting Act, with its "fitfull and confused history," is "inflexible" and "unfortunate," and that it was no wonder these school boards, acting within the Act's first year, found it "unfamiliar and obscure." They argue that the violations, which they call mere "irregularities," were not "significant" or "material" and that they substantially complied with the Act. They argue that the annexation should not be invalidated because, as it turned out, a bare majority of the voters approved it. And, they argue that the violations were not willful because they meant no harm and were simply trying, in good faith, to do the right thing for the schoolchildren.

We find none of these arguments persuasive.

■ The Open Meeting Act is not obscure or incomprehensible. On the contrary, anyone with ten minutes to spare can read the whole thing and understand virtually every word. Each member of a covered public body should have taken that ten minutes as soon as the Act became effective on October 1, 1977. Lack of familiarity is no excuse. We agree with the Court's statement in the *Palm Beach* case, *supra*:

> The principle to be followed is very simple: When in doubt, the members of any board, agency, authority or commission should follow the open-meeting policy of the State.

■ Neither do we consider these violations "insignificant" or "immaterial." To our minds, the notice and agenda provisions are at the very heart of the Sunshine Law. As Mr. Weis points out in his article, *supra*, without public notice, Sunshine legislation

is ineffective. *See also, Jones v. East Windsor Regional Board of Education,* 143 N.J.Super. 182, 362 A.2d 1228 (1967), (a school board action taken in a meeting not preceded by proper notice held void, notwithstanding the fact that many of the public knew about, and attended, the meeting).

Considering an argument that a "substantial compliance" exception should be made to an open meeting act in *Polillo v. Deane, supra,* the Court wrote:

> Rather than providing a new exception to the rule, we believe that defendants' suggestion would swallow the rule. Accordingly we reject this argument completely and hold that strict adherence to the letter of the law is required....

We hold likewise.

Additionally, the Oklahoma Court of Criminal Appeals in *Hilliary v. State,* 630 P.2d 791 (Okl.Cr.1981) affirming convictions for Open Meeting Act violations under § 314, rejected a similar argument and held, "Before this Court is a factual base which would not support even substantial compliance." We too are dealing, not with substantial compliance, but with pure noncompliance.

■ Appellees' argument that the annexation should be allowed to stand because a majority of electors voted for it misconceives the purpose of the Sunshine Law. It is not meant to insure that public bodies follow the dictates of the majority. Rather, as stated in § 302, it is meant to "encourage and facilitate an informed citizenry's understanding of the governmental process and governmental problems." Where an action is taken in violation of the Act, it is irrelevant whether the action was popular or unpopular.

Courts hold that subsequent events, such as "ratifying" actions or decisions previously made in violation of Open Meeting laws, will not cure the violations, will not "breathe life" into the prior illegal action. *Bigelow v. Howze,* 291 So.2d 645 (Fla.App.1974);

*Kramer v. Board of Adjustment, Sea Girt,* 80 N.J.Super. 454, 194 A.2d 26 (1963). We think that principle applies here. The election did not rectify the harm to the public because the harm did not lie in the annexation itself. The harm lay in the lack of proper notice and agenda, notice and agenda which are crucial to the Sunshine Law's purpose. The election did not "cure" these violations.

■ Finally, in contending that the violations were not willful, appellees quote cases decided in other contexts to suggest the word willful means "with evil intent and malice," "implying a set purpose and design," "premeditation, obstinacy, and intentional wrongdoing." Appellees seem to think that "good faith" precludes a finding of willfulness.

We cannot agree with this narrow interpretation. In *Laman v. McCord,* 245 Ark. 401, 432 S.W.2d 753 (1968), cited by our Supreme Court in the *Firefighters* case, *supra,* the Court rejected a contention that the inclusion of criminal sanctions (in Oklahoma, § 314) makes a Sunshine Law penal thus requiring application of the rule of strict construction. Rather, the Court stated:

> We have no hesitation in asserting our conviction that the ... Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved.

In our opinion, to weight down the term "willful" with the heavy synonyms appellees propose would not further the Act's praiseworthy purpose. If willful is narrowly interpreted, if actions taken in violation of the Act could not be set aside unless done in bad faith, maliciously, obstinately, with a premeditated evil design and intent to do wrong, then the public would be left helpless to enforce the Act most of the time and public bodies could go merrily along, in good faith, ignoring the Act.

Like the Court in *Town of Palm Beach, supra,* we believe that "[f]ew, if any, gov-

ernmental boards or agencies deliberately attempt to circumvent the government in the Sunshine Law." Like the Court in *Caldwell v. Lambrou*, 161 N.J.Super. 284, 391 A.2d 590 (1978), we think the goal of the Legislature was not simply to prevent or punish deliberate violations, but to restore sadly sagging public confidence in government, a goal which is hurt by every noncomplying meeting regardless of whether the noncompliance resulted from "evil motives" or not. *See also, Bogert v. Allentown Housing Authority*, 426 Pa. 151, 231 A.2d 147 (1967); *Kramer v. Board of Adjustment, Sea Girt, supra; Wolf v. Zoning Board of Adjustment of Borough of Park Ridge*, 79 N.J.Super. 546, 192 A.2d 305 (1963).

We find the thoughtful approaches and careful articulations of these courts in other jurisdictions generally persuasive. Nevertheless, the acts applied by these courts do not contain provisions dealing with willfulness. A fundamental rule of statutory construction holds that every word in an enactment must be given effect. We reject the overly narrow definition proposed by appellees since it would result in virtually no actions being invalidated and we do not think that was the legislative intent. On the other hand, we must be careful to avoid giving it an overly broad definition, under which virtually every action would be invalidated, because then the word "willful" would have no meaning.

In trying to interpret the Act most favorably to the public for whose benefit it was enacted, in trying to interpret § 313 consistently with the Act's stated purpose, and in trying to give effect to every word the Legislature used, we hold thus: The word "willful" in 25 O.S.Supp.1977, § 313, providing that actions taken in willful violation of the Open Meeting Act shall be invalid, does not require a showing of bad faith, malice, or wantonness, but rather, encompasses both conscious, purposeful violations of the law and blatant or deliberate disregard of the law by those who know, or should know, the requirements of the Open Meeting Act.

Applying this interpretation to the case at bar, we conclude that the violations were willful. While we discern no bad faith, malice, or wantonness, and while the officials may not have consciously broken the law, we are well-convinced that they knew or should have known the Act's requirements and blatantly or deliberately disregarded the law. The violations being willful, 25 O.S.Supp.1977, § 313, requires that the actions taken "shall be invalid."

## V.  CONCLUSION AND DISPOSITION

Essentially, appellees ask us to wink at these Open Meeting Act violations. This we will not do, for to wink at violations in one case is to invite them in another. The Oklahoma Legislature, elected voice of the people of this state, mandated open meetings, including observance of the notice and agenda provisions. We in the judiciary are bound to honor that mandate. As appellants' counsel points out, without vigorous enforcement in the courts, laudable legislation is reduced to "mere words." Well, not this laudable legislation, not in this Court, not in this case. The Legislature has said, "Let the sun shine on government." So say we today.

Having found that the Open Meeting Act applies to the instant case, having found that the Act was violated, and having found that the violations were willful, we hold that the actions leading to and effectuating the annexation of Oglesby School District by Caney Valley School District were invalid under 25 O.S.Supp.1977, § 313. Therefore, the trial court's judgment is reversed, the annexation order vacated, and the case remanded for further proceedings.

Ordinarily, the effect of invalidating actions would be to require the violating public bodies to start over, this time in compliance with the Sunshine Law. Here, though, one of the violators, Oglesby School Board, no longer exists. Hence, we direct that the matter be referred to Superintendent Frazier or his successor to take immediate steps toward effecting a satisfactory

and proper annexation of the territory previously covered by Oglesby District to Caney Valley District, Bartlesville District, or both, preferably with the participation of the Boards of Education of both those districts, in accordance with applicable state law, including, needless to say, the Oklahoma Open Meeting Act.

REVERSED AND REMANDED.

BOX, P. J., and REYNOLDS, J., concur.