BAILEY v. STATE ex rel. BD. OF TESTS FOR ALCOHOL AND DRUG INFLUENCE
2022 OK 50
Case Number: 118532
Decided: 05/24/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 50, __ P.3d __

 

 

COURTNEY BAILEY, KENNETH BAXTER, OSCAR BERNAL, KEVIN BUCKMASTER, EZEQUIEL CARDENAS-MEKIA, BENJAMIN CLEMENTS, CHANCE GIMLIN, ALEX HILL, MELANIE HUNTER, LANNETTE JORDAY, CORBIN LACEY, COLTON LIENTZ, TREVOR MCFARLAND, JOHNNY NEEDHAM, AMBER OSEI, REGIN PREM-AMAND, DONALD RILEY, DARIN SEEBECK, KALA VAN KIRK, and AUSTIN VASICEK, Plaintiffs/Appellees,
v.
STATE OF OKLAHOMA, ex rel., BOARD OF TESTS FOR ALCOHOL AND DRUG INFLUENCE, and KEVIN BEHRENS,
and
STATE OF OKLAHOMA, ex rel. DEPARTMENT OF PUBLIC SAFETY, RUSTY RHOADES, COMMISSIONER, Defendants/Appellants.

CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION NO. I

¶0 Plaintiffs filed an action in the District Court challenging rules adopted by the Oklahoma Board of Tests for Alcohol and Drug Influence at one of its meetings. Those rules were subsequently used by the Oklahoma Department of Public Safety in actions to revoke the plaintiffs' driver's licenses. The Honorable Thomas E. Prince, District Judge, for the District Court of Oklahoma County, held an evidentiary hearing and concluded (1) the Board violated the Oklahoma Open Meeting Act and (2) rules adopted by the Board at its meeting were invalid. Defendants appealed and the Court of Civil Appeals concluded a willful violation of the Open Meeting Act did not occur and reversed the District Court. The plaintiffs filed a petition for certiorari to review the opinion by the Court of Civil Appeals. We previously granted certiorari. We hold: The evidence was insufficient to make a prima facie case that the Board's Director willfully violated the Open Meeting Act when he failed to send the email notice of the special meeting to the Secretary of State.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF
CIVIL APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED;
AND CONTROVERSY REMANDED FOR ADDITIONAL PROCEEDINGS

Kevin L. McClure, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, Oklahoma, for Defendants/Appellants.

Brian K. Morton, Oklahoma City, Oklahoma, for Plaintiffs/Appellees.

EDMONDSON, J.

¶1 The issue before us is whether the evidence was sufficient to show a prima facie case that an official committed a willful violation of the Open Meeting Act when he did not send a notice of a special meeting to the Secretary of State. We hold the evidence was insufficient to show a prima facie willful violation of a statute.

I. Trial Court Controversy

¶2 Plaintiffs' petition in the District Court invoked a statute authorizing a declaratory judgment (12 O.S. § 165175 O.S. §§ 253

¶3 The challenged rules were adopted in response to a decision by the Court of Civil Appeals. In Sample v. State ex rel. Department of Public Safety, 2016 OK CIV APP 62382 P.3d 505Sample relied upon the then current version of 47 O.S. § 759Sample, and these are the rules challenged by plaintiffs.

¶4 Plaintiffs argued the Board violated provisions in Oklahoma's Open Meeting Act (OMA),25 O.S.2011 § 31175 O.S.Supp.2013 § 253

¶5 The defendants answered and asserted plaintiffs "have an exclusive remedy to raise the issues they have raised in this case in the county where their implied consent case has been filed." Defendants admitted certain rules were promulgated and denied such rules invalidated plaintiffs' arrests or the accuracy of plaintiffs' breath tests. Defendants denied the alleged violations of the OMA, OAPA, and the rules of the Board.

¶6 Plaintiffs filed a motion to enter the cause on a non-jury docket for trial. No pretrial conference was held and no Rule 5 pretrial order was filed.

¶7 Defendants' combined motion and brief contains several references to "undisputed evidence." No issue is identified as a specific issue of fact for trial court review, and the identified issues are explained with references to one or more legal principles needing an adjudication. Defendants argued "it is undisputed that the Board did give actual notice of the Special Meeting to the public and to Plaintiffs' own attorney." The conclusion of the motion states undisputed evidence shows no violation of the Administrative Code or the Open Meeting Act, and by plaintiffs' guilty pleas in previous criminal cases "they come into this court with unclean hands and are precluded from challenging the Emergency [administrative] Rules."

¶8 On October 31, 2019, the parties appeared for the evidentiary hearing. The trial judge asked for opening statements and plaintiffs' counsel stated defendants "carry the burden" and could speak first. The trial judge characterized defendants' speaking first as "the burden of presentation, [and] order of proof." Defendants argued three issues were before the trial court: (1) Whether the Board violated the OAPA and 40:1-1-3 of the Administrative Code, and that defendants had the burden of proof; (2) Whether the Board's Special Meeting on October 7, 2016 violated the OMA due to improper and willful conduct of an official, and plaintiffs had this burden of proof; and (3) Whether the Board properly promulgated emergency rules, and defendants had this burden. Two witnesses testified at the hearing, a former Director for the Board and a former member of the Board. The trial court filed the journal entry of judgment a few weeks after the hearing.

¶9 The judgment states that on October 5, 2016, the Director of the Board sent a Notice of a Special Meeting to all of the individuals and media who had requested email notifications of the Board's meetings. The notice was for a meeting "to discuss possible action on proposed emergency rulemaking." The court determined the notice for the meeting was properly posted at the Board's offices. The trial court also determined in preparation for the meeting "and in promulgating the Emergency Rules, Director Behrens complied with the 'Rule Impact Statement' that is required by 25 O.S. 2011, § 253." The Special Meeting held on October 7, 2016, "was attended by various Media organizations, as well as numerous attorneys, including Plaintiffs' attorney, Brian Morton."

¶10 The Board approved five emergency rules at the meeting. The Governor approved four of the emergency rules the same day as the meeting and approved the fifth emergency rule three days later on October 10, 2016. These emergency rules were published by the Secretary of State in the official State Registry on November 15, 2016.

¶11 The trial court rejected plaintiffs' claim that the Special Meeting was not properly called. Email communications between the Board's Director and members of the Board showed that at least four members of the Board were in agreement to hold the meeting. The court found the requirements in the Board's rules for calling a meeting were satisfied.

¶12 Plaintiffs also claimed the advance public notice of the Special Meeting was not properly given to the Secretary of State as required by 25 O.S.2011 § 31125 O.S. § 311

Special meetings of public bodies shall not be held without public notice being given at least forty-eight (48) hours prior to said meetings. Such public notice of date, time and place shall be given in writing, in person or by telephonic means to the Secretary of State or to the county clerk or to the municipal clerk of the public bodies in the manner set forth in paragraphs 2, 3, 4, 5 and 6 of this section.

The Director testified he was aware of a duty to give notice to the Secretary of State, and that neither he nor anyone else on behalf of the Board took any action to provide notice to the Secretary of State. The Director testified he "negligently failed to send the email" for the notice of the hearing to the Secretary of State.

¶13 The trial court's judgment states defendants' motion for summary judgment was previously denied "because of the existence of fact issues regarding the 'willfulness violation' standard set out in 25 O.S.2011, § 31325 O.S. 2011, § 313

A. Director Behrens testified that he was aware of the duty to give notice to the Secretary of State;
B. Director Behrens testified that neither he nor anyone else on behalf of the BoT [the Board] took any steps to provide notice of the Special Meeting to the Secretary of State;
C. Director Behrens testified that he "did not send an email" to the Secretary of State, and that he has "no memory of telling them (i.e., the Office of the Secretary of State) of the meeting;"
D. Director Behrens further testified that he had "negligently failed to send the email" to the Secretary of State.

The trial court stated the issue of a "willful violation" in 25 O.S. § 313In the Matter of the Appeal of the Order Declaring Annexation Dated June 28, 1978, issued by Gene Frasier, 1981 OK CIV APP 57637 P.2d 1270Wilson v. City of Tecumseh, 2008 OK CIV APP 84194 P.3d 140

¶14 The trial court found the failure of the Board to notify the Secretary of State a willful violation, and then stated the Emergency Rules adopted by the Board at the Special meeting were invalid. The journal entry of judgment states: "This journal entry is to be considered a final order, as the Journal Entry disposing of all claims at issue in this matter." The journal entry states a declaratory judgment is granted to the plaintiffs as sought in their petition.

II. Appeal and Certiorari Issues

¶15 Defendants appealed and raised two assignments of error as separate grounds to reverse the trial court's judgment. One assignment of error is based upon plaintiffs invoking "another action pending between parties for the same claim," and "res judicata, collateral estoppel, judicial estoppel, and/or issue preclusion." One part or aspect of these defenses was raised in their summary judgment motion when they made a combined mootness, standing, and estoppel argument. They argued plaintiffs were required by Martin v. Phillips, 2018 OK 56422 P.3d 143

¶16 The second assignment of error challenged the trial court's construction of the Open Meeting Act, and the appellate court reversed the judgment of the District Court. The appellate court concluded no willful violation of the OMA occurred because the evidence showed the Director's conduct was accidental and constituted negligent noncompliance with the Act. Defendants argue the appellate court's holding is that a willful violation of the OMA requires an official's intent to violate the Act. The appellate court concluded the Director's conduct was not willful, and reversed the trial court's judgment.

¶17 Plaintiffs sought certiorari for review of the appellate opinion. Plaintiffs' claims on certiorari may be summarized as follows: (1) The appellate opinion conflicts with District Court's findings of fact; (2) The appellate opinion conflicts with Excise Board of Greer County v. Rogers, 1984 OK 95701 P.2d 754Fraternal Order of Police v. City of Norman, 2021 OK 20489 P.3d 20Okmulgee County Rural Water District No, 2 v. Beggs Public Works Authority, 2009 OK CIV APP 51211 P.3d 225

III. Standard of Review

¶18 The arguments on certiorari involve the concept of willful conduct by an official when the official fails to provide notice as required by the OMA. Defendants' principal appellate brief recites evidence before the trial court, and then concludes with a statement the Director did not willfully violate the OMA. Defendants rely upon Wells v. Oklahoma Roofing & Sheet Metal, L.L.C., 2019 OK 45457 P.3d 1020willful "carries with it some degree of 'intent' to violate the Act." Defendants argue the Director sent out a group email including a Notice and Agenda for a special meeting, but he negligently failed to include the Secretary of State as a recipient of an email notification.

¶19 Defendants argue the trial court improperly concluded "even negligent unintentional acts meet that definition [of willful for a violation of the OMA]." Defendants' argument concludes with an assertion that a contested question of law construing a statute is reviewed de novo and the trial court's holding that a willful violation occurred should be reversed on appeal. Defendants' response on certiorari adds additional argument concerning the nature of willful conduct, and relies upon language in the opinion by the Court of Civil Appeals.

¶20 Plaintiffs' appellate brief argues the determination of the Director's willfulness was a trial court's adjudication of fact, and an "issue of fact that must be analyzed under the cases of In the Matter of the Appeal of the Order Declaring Annexation Dated June 28, 1978, Issued by Gene Frasier, 1981 OK CIV APP 57637 P.2d 1270Wilson v. City of Tecumseh, 2008 OK CIV APP 84194 P.3d 140de novo appellate review is proper for an issue of law, and they rely upon two of our opinions for this concept.

¶21 In one sense, every appeal requires judicial explanation and application of one or more principles of law, and a principle of law presented as an issue or question for appellate adjudication receives de novo review.de novo standard of review.i.e., methods for reviewing a trial court finding of fact.

¶22 The parties argue whether the evidence before the trial court showed willful conduct by the Director concerning a violation of the OMA. They do not use phrases such as "insufficient evidence" or "sufficiency of evidence," but their arguments on appeal and certiorari concern whether evidence in the trial court was sufficient to show willful conduct. They label a trial court's adjudication of a willful violation of the OMA as an adjudication on an "issue of fact" in a declaratory judgment proceeding. The District Court denied a motion for summary judgment and stated an evidentiary hearing was necessary on an issue of fact. An issue of fact or mixed issue of law and fact usually requires a deferential appellate standard when a fact was controverted and adjudicated by a District Court.

¶ 23 An appellate standard of review for an assignment of error is based upon the type of the proceeding, nature of the decision, and the trial court procedural context with its particular judicial discretion exercised.

¶24 Generally, a trial court's finding of a fact in a trial will not be reviewed on appeal as a ground to reverse the judgment when evidence in the record is sufficient to support the judgment rendered.de novo; i.e., whether the evidence submitted fails as a matter of law in showing a necessary legal element.de novo,

¶25 The controversy before us is whether there was proof showing willful conduct by the Director who failed to provide notice of the special meeting to the Secretary of State. Our appellate review is not de novo merely because the OMA statutory phrase "willful violation" must be defined and applied, but because the assignment of error is whether the evidence showed a prima facie case of willful conduct as an issue of law.

 

IV. Willful Conduct and Violation of the OMA

 

¶26 Plaintiffs argue: If an official knows he or she has an official duty and fails to perform the duty, then the official's failure to perform is one type of knowing and intentional conduct, and a willful violation. Important to plaintiffs' view is a sentence in their petition for certiorari where they comment that willful conduct includes conduct by an official who "knew or should have known" his or her conduct would violate a statute. Plaintiffs focus on the Director's knowledge that a statutory duty exists, combined with a should-have-known concept applied to the fact the Director was unaware he omitted to include the Secretary of State's email address on a group or individual email giving notice of the Board's meeting.

¶27 Defendants argue: If an official negligently fails to perform an official duty, then this failure is not intentional conduct and not a willful violation of the statute. Defendants' argument has an element similar to plaintiffs' argument, i.e., focusing on knowledge possessed by an official. Defendants cite the transcript of the hearing and they rely on the Director's knowledge and awareness of his own conduct when performing the requirements of the OMA, a failure to include the email address for the Secretary of State in an email.

¶28 The defendants' argument may be summarized as follows. Defendants point to the Director's self-assessment of negligence and they cite the Director's lack of awareness of factual circumstances as a determinative element for an adjudication stating willful conduct did not occur. They argue a willful violation of the OMA requires conduct "substantially higher in magnitude than simple inadvertence in negligence." They argue a willful violation of the OMA should be based upon "premeditation" and "intentional wrongdoing," and they rely on a statute in Oklahoma's criminal code defining "willfully", 21 O.S.2011 § 92

¶29 The controversy before us is controlled by the legislatively-controlled purpose and language of the OMA. Legislative intent controls statutory interpretation.25 O.S.2011 § 30225 O.S. § 31425 O.S. § 313

¶30 Historically, a statute could denounce the mere doing of an act as criminal, and a statute could also denounce as criminal the willful doing of an act. The first type of statute included those offenses classified as mala prohibita where intent was imputed.mala prohibita statute was usually described as a form of police regulation, intended to protect the public or to promote the general welfare, and a criminal intent was not considered a necessary element, unless so declared by the legislature in apt words.mens rea and (2) public welfare offenses requiring no mens rea and characterized as malum prohibitum.

¶31 The High Court explained that many public welfare offenses "depend on no mental element but consist only of forbidden acts or omissions." Liparota v. United States, 471 U.S. 419, 432, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (quoting Morissette v. United States, 342 U.S. 246, 251-252-253, 72 S.Ct. 240, 244, 96 L.Ed. 288 (1952)). Importantly, the Court noted the existence of reasonable distinctions in the knowledge of actors charged with violating various public welfare regulations. For example, in Liparota the Court discussed knowledge of the actor in different types of public regulatory statutes, and explained "a corporate officer could violate the Food, Drug, and Cosmetic Act when his firm shipped adulterated and misbranded drugs, even 'though consciousness of wrongdoing be totally wanting.'"i.e., the mistake of fact negates the existence of a mental state essential to the crime charged.

¶32 Although the distinction between malum in se and malum prohibitum statutes may be improper for some modern-day controversies,mala prohibita public regulation. For example, a lack of awareness, mistake, or honest inadvertence was mentioned more than a hundred and seventy-five years ago when a court commented on a public official's willful neglect of duty and observed the official knew what was asked of him, knew what he refused, and the neglect could not be excused because there were no facts showing surprise, inadvertence, or misapprehension on the part of the official.

¶32 In modern times we have statutory schemes which combine civil remedies with criminal penalties. The degree of culpability labeled as negligence, gross negligence, willful conduct, and intentional conduct may all be included and prohibited by a single statutory scheme.malum prohibitum.beyond a showing of willfulness was not statutorily required.

¶33 In summary, defendants argue the combined civil and criminal remedial scheme in the OMA uses a consistent definition for both civil and criminal willfulness, and a reasonable and honest single mistake of fact by the Director giving an OMA notice is a defense to a claim of both civil and criminal willfulness because the purpose of the OMA was not frustrated by the Director's mistake.

¶34 When we have examined the concept of an official's willful conduct in the context of a statutory duty we have explained our definition of willfulness has varied based upon the statutes in question and the intent and purpose of the statutory language.Fraternal Order of Police v. City of Norman, 2021 OK 20489 P.3d 20

Willfulness does not require a showing of bad faith, malice, or wantonness, but rather, encompasses conscious, purposeful violations of the law or blatant or deliberate disregard of the law by those who know, or should know the requirements of the Act. Notice of meetings of public bodies which are deceptively vague and likely to mislead constitute a willful violation.

Id. 2021 OK 20Rogers v. Excise Board of Greer County, 1984 OK 95701 P.2d 754Fraternal Order of Police, 2021 OK 20Id. 2021 OK 20

¶35 Plaintiffs rely upon language in appellate opinions stating a deceptively worded notice or agenda violates the OMA by obscuring the purpose of a public meeting. For example, plaintiffs rely upon Okmulgee County Rural Water Dist. No. 2 v. Beggs Public Works Authority, 2009 OK CIV APP 51211 P.3d 225Haworth Board of Education of of Independent School Dist. No. I--6 v. Havens, 1981 OK CIV APP 56637 P.2d 902Haworth stated a public policy advanced by the OMA "is defeated if the required notice is deceptively worded or materially obscures the stated purpose of the meeting." Id. 637 P.2d at 904. Similarly, they rely upon Wilson v. City of Tecumseh, 2008 OK CIV APP 84194 P.3d 140

¶36 Plaintiffs also rely upon In the Matter of the Appeal of the Order Declaring Annexation Dated June 28, 1978, Issued by Gene Frasier, 1981 OK CIV APP 57637 P.2d 1270and blatantly or deliberately disregarded the law." Id. 637 P.2d at 1275 (emphasis added). The phrase "and blatantly or deliberately disregarded the law " references what officials did, the character of their conduct, in combination with what officials knew or should have known. The appellate court did not equate (1) an official's mere knowledge of his or her duty "to know or should know" the OMA with (2) that which is willful. The concept of willfulness was applied to the official's conduct. Because this know-or-should-know duty always exists for an official it cannot be the determinative factor for when an official's conduct is willful in failing to follow a statute. It has been a long-established rule of law that public officials are presumed to do their duty.necessarily willful conduct because officials are charged with knowing the law; and if an official claims to be ignorant of the law, then the official has also engaged in willful conduct by remaining ignorant of the official's statutory duties when violating a statute. In other words, a failure to follow a statute in the OMA will always be some type of willfulness if we were to adopt plaintiffs' views. Rogers v. Excise Board of Greer County, supra, did not expand upon the concept of blatant conduct violating a statute and a party showing an official's willfulness: "Willfulness does not require a showing of bad faith, malice, or wantonness, but rather, encompasses conscious, purposeful violations of the law or blatant or deliberate disregard of the law by those who know, or should know the requirements of the Act." Rogers, 701 P.2d at 761. The descriptive words: "purposeful," "blatant," and "deliberate" reference conduct that violates a statute. These descriptive terms are not used to describe either the presence or character of the official's knowledge of law and legal obligations. Again, officials always know or should know the law when performing any official act, and it is the character or nature of that act the official performs in the context of particular factual circumstances which determines whether the conduct shows or demonstrates a blatant, conscious, deliberate, purposeful, or willful violation of a statute the official knows or should know.

¶37 Plaintiffs' argument based upon these opinions includes a comparison and characterization of two results: (1) A deceptive notice results in a failure to properly inform the public of a meeting; and (2) A failure to send a notice to the Secretary of State results in a failure to properly inform the public of a meeting. The two results are equated for the purpose of defining a willful violation of the OMA. Clearly, the OMA requires more than a mere violation of the Act to invalidate action of officials: "Any action taken in willful violation of this act shall be invalid." 25 O.S., 2011 § 313

¶38 We disagree with one of defendants' assertions that evidence must show an official factually intended to violate the OMA before actions at public meetings are judicially invalidated due to OMA noncompliance. We also disagree with plaintiffs' assertion a willful violation may be shown by merely pointing to (1) an official's knowledge of a statutory duty and (2) a result which is an actual failure to perform this duty. Our opinions have uniformly stated a willful violation for the purpose of the OMA is conduct that is "conscious," "purposeful," "blatant" or "deliberate" disregard of the law. Fraternal Order of Police v. City of Norman, supra. Answering questions such as why an official's notice did not comply with the OMA, manner of noncompliance, frequency of noncompliance, effect of noncompliance, and extent of noncompliance are important in the judicial determination whether a willful violation of the OMA occurred. Answering this question requires an examination of the record and its application to the de novo issue whether a prima facie case was presented.

¶39 The official involved, the Director of the Board, testified he was notified on September 29th of an order in Sample which finalized the case. He explained the perceived need by certain officials for the Board to respond and immediately create new rules. He testified concerning several communications with members of the Board and General Counsel for the Governor of Oklahoma during the first week of October 2016. The Director sent emails to Board members to determine availability for a special meeting and the content of proposed emergency rules. In conversations with the General Counsel for the Governor it "was clear that waiting three weeks was not an option," "this was a priority for the Governor's office," "that this issue be handled quickly," "and I needed to get it done quickly." Tr. at 25.

¶40 He indicated that between September 29th and October 7th the media was reporting on issues related to Sample and alcohol testing by law enforcement. The Director "dealt with probably three to five media requests per day including "on-camera interviews, it was a very busy time with the media." Tr. at 26. He testified "there was -- this was a public safety concern because there were no -- arguably, there were no viable test methods available to law enforcement for impaired driving purposes." Tr. at 36.

¶41 Between September 29th and October 7th the Director coordinated drafting the emergency rules with the members of the Board, Governor's Office, and the Department of Public Safety by "sending out drafts, getting comments back and incorporating those" in the rules. Tr. at 26. He also coordinated input from the Oklahoma District Attorneys Council and incorporated this input into the rules.

¶42 The Director posted a notice and agenda of the meeting at the principal place of business of the Board where it meets. He posted forty-eight hours in advance of the meeting. He notified members of the Board and people who had requested notice of the rule-making. He emailed the notice and agenda to individuals, entities, organizations, and news media who requested notice. He stated "that's probably 30 people, 30 individual email addresses, I sent that to that group that I keep." Plaintiffs' counsel was on the list of individuals to receive notice of the hearing.

¶43 The Director testified that at the time of providing notice of the hearing by the group email he thought he had given notice of this email to the Secretary of State: "And I at least thought I sent it to the Secretary of State's Office." Tr. at 30. After given notice of plaintiffs' action, the Director discovered he had not given an actual email notice of the meeting to the Secretary of State. The Director testified his usual and ordinary practice for giving notice to the Secretary of State was by email to an email address furnished by the Secretary of State for such purpose.

"That was part of the process that I do, I mean, I had had special meetings before a number of times. In this Instance I -- with all the things that I talked about having to -- being done from September 29th until October 7th, I -- sending that notice to the Secretary of State slipped through the cracks.

Tr. at 44. His usual practice was to send an email to the Secretary of State when he sent an email to the group of individuals interested in the meeting. Tr. at 44. He testified that he did not intentionally fail to send a notice to the Secretary of State. He stated he was negligent when failing to provide the notice. He was asked if he sent an email to the Secretary of State with the notice and agenda of the meeting and he responded: "I did not." Tr. at 45.

¶44 The Director testified he had conversations with the Secretary of State's office immediately prior to the meeting, and "we talked about the emergency rules themselves, filing them, [and] the rule process." Tr. at 27. They also "talked about the dates of the meetings and contents of the meetings," but the Director did not have any memory of informing anyone in the office of the Secretary of State about the time and date of the meeting on October 7, 2016. Tr. at 45-46.

¶45 The Director's testimony characterizes his conduct as negligence when failing to notify the Secretary of State. His testimony is essentially an explanation of his lack of knowledge or self-awareness concerning his own actions and conduct when sending emails notifying the media and individuals of the special meeting: "I...thought I sent it to the Secretary of State's Office," when in fact he did not send the email to the Secretary of State.

¶46 The evidence before the trial court was that the Director sent the notice of the special meeting to several individuals by email. This evidence also included the Director stating he routinely sends notices for special meetings to an email address maintained by the Secretary of State for the purpose of receiving notices of meetings. He stated he thought he notified the Secretary of State of this specific meeting, and he was unaware he had not sent the email until receiving notification of plaintiffs' legal action. He provided his view why the notice to the Secretary of State "slipped through the cracks." The only evidence presented to show a willful or purposeful conduct was the Secretary of State not receiving the notice, the Director's statement he was aware of the statute requiring a notice filed with the Secretary of State, and the Director usually filed such notices.

¶47 The trial court heard this evidence and made findings on the issue of the Director's willful conduct. One finding states neither the Director nor anyone else "took any steps to provide notice of the Special Meeting to the Secretary of State." Uncontradicted testimony by the Director stated he sent a group email notice of the meeting, this type of group email by him ordinarily has the Secretary of State as a recipient or he sends the email at the same time to the Secretary of State, but the Director failed to add the Secretary of State's email address. The Director testified this email was the step he ordinarily took to inform the Secretary of State, but its execution was faulty due to a mistake of fact related to the Director's awareness of his conduct while busily engaged with his duties. The trial court focused on the Director's assessment of his actions and the result of the Secretary of State not receiving notice, and used the assessment and result as evidence no steps were taken to provide notice.

¶48 The trial court made an express finding of willful conduct by the Director based upon its finding that Director testified he "negligently failed to send the email." The issue of an actor's knowledge and awareness occurs in both negligence and willfulness classifications, but they are not identical. The concept of what an actor knows or should know occurs in negligence cases.Restatement (Second) of Torts, § 289 (1965),

¶49 Characterizing a party's degree of negligence or intentional conduct is generally understood as an assessment on a continuum of culpability or tort liability. This view was recently explained by our Court when we stated "It is well-settled that the common law divides actionable tortious conduct into two categories: (1) accidental and (2) willful acts that result in intended or unintended harm."

¶50 Several years ago we stated gross negligence was substantially higher in magnitude than simple inadvertence in negligence, and also in a particular application gross negligence may fall short of an intentional wrong. Graham v. Keuchel, 1993 OK 6847 P.2d 342one type of willful conduct when the actor's conduct "demonstrates such a total disregard of another's rights that it may be equated with evil intent or implies such entire want of care or recklessness of conduct that it (a) can be likened to positive misconduct or (b) evinces a conscious indifference to predictable adverse consequences." Id.

¶51 In summary, gross negligence may be equated with one type of willful conduct in tort. The trial court did make a finding of negligence by the Director, but negligence is ordinarily associated with types of inadvertence and not types of willful conduct. Assuming for the purpose of argument a tort standard for gross negligence could be used to show a willful violation of the OMA, the trial court made no finding of gross negligence nor did it use such a concept to make a finding of a willful violation of the OMA.

¶52 Upon examination of the trial court's findings and the trial record for (1) the defendants' asserted reason for noncompliance, (2) manner of noncompliance, (3) frequency of noncompliance, (4) extent of noncompliance, and (5) effect of noncompliance,

¶53 We need not determine whether a 25 O.S. § 31325 O.S. § 31425 O.S. § 313Fraternal Order of Police v. City of Norman, supra, explain a willful violation of the OMA requires conduct that is "conscious," "purposeful," "blatant" or "deliberate" disregard of the law.

¶54 We agree with defendants the Director's failure to include the Secretary of State's name on a group email to several email addresses on one occasion did not frustrate the purpose of the OMA at a meeting when (1) individuals and entities desiring to be notified of such were notified, (2) the reason for the failure to send the notice is supported by testimony indicating a single honest mistake while trying to send the notice, and (3) the failure to provide actual notice to the Secretary of State occurred during unusual circumstances involving a perceived need for timely regulations concerning public safety. We agree with defendants the evidence was insufficient to show the Director's willful violation of the OMA notice provision requiring notice sent to the Secretary of State. The District Court judgment is reversed on this issue.

V. Conclusion, Reversal, and Remand

¶55 We hold the evidence was insufficient to make a prima facie case that the Board's Director willfully violated the Open Meeting Act when he failed to send the email notice of the special meeting to the Secretary of State. The District Court's declaratory judgment finding an Open Meeting Act willful violation is reversed. The District Court's determination that the Board's emergency rules were invalid based upon a willful violation of the OMA is also reversed.

¶56 Defendants also raised an alleged error of the District Court when it denied their defense combining mootness, standing, and estoppel theories. This assignment of error was not decided by the Court of Civil Appeals and defendants did not raise it on certiorari. We do not address this assignment of error.

¶57 The District Court judgment rejected plaintiffs' claim asserting the Board's Special Meeting was not properly called. Plaintiffs did not appeal this disposition and it is not before us on certiorari.

¶58 The opinion of the Court of Civil Appeals is vacated. The judgment of the District Court is reversed, and the controversy is remanded to the District Court for additional proceedings consistent with the Court's opinion.

¶59 CONCUR: DARBY, C.J.; KANE, V.C.J.; KAUGER, WINCHESTER, EDMONDSON, COMBS, and ROWE, JJ.

¶60 DISSENT: GURICH, and KUEHN, (by separate writing), JJ.

FOOTNOTES

State, ex rel. Pruitt v. Native Wholesale Supply, 2014 OK 49338 P.3d 613Sides v. John Cordes, Inc., 1999 OK 36981 P.2d 301cf. Dan B. Dobbs, Paul T. Hayden and Ellen M. Burdick, The Law of Torts, § 124 (2d ed., as updated 2018) (explained a "prima facie case for negligence" by identifying the elements for the cause of action of negligence).

Bank of the Wichitas v. Ledford, 2006 OK 73de novo standard."); Barber v. Barber, 2003 OK 5277 P.3d 576de novo on appeal).

Christian v. Gray, 2003 OK 1065 P.3d 591Brown v. Nicholson, 1997 OK 32935 P.2d 319Kluver v. Weatherford Hosp. Auth., 1993 OK 85859 P.2d 1081

2021 OK 31489 P.3d 36

I. T. K. v. Mounds Public Schools, 2019 OK 59451 P.3d 125Bruner v. Timberlane Manor Limited Partnership, 2006 OK 90155 P.3d 16Feightner v. Bank of Okla., 2003 OK 2065 P.3d 624

Calvert v. Swinford, 2016 OK 100382 P.3d 1028Ellington v. Horwitz Enterprises, 2003 OK 3768 P.3d 983

Additional exceptions to applying a deferential review may arise based upon the nature of the issue or the tribunal reviewed. See, e.g., Thompson v. Anchor Glass, 2003 OK 3973 P.3d 836de novo review of disputed jurisdictional facts necessary for an administrative adjudication).

infra at ¶ 24.

2020 OK 110478 P.3d 422

2017 OK 34394 P.3d 12241998 OK 58961 P.2d 804

See, e.g., Carpenter v. Carpenter, 1982 OK 38645 P.2d 47612 O.S. § 1651

12 O.S. § 165175 O.S. § 30675 O.S.2011 § 306

I. T. K. v. Mounds Pub. Schls., 2019 OK 59451 P.3d 125Central Plastics Co. v. Goodson, 1975 OK 71537 P.2d 330

I. T. K. v. Mounds Pub. Schls., 2019 OK 59Nelson v. Enid Medical Assocs., Inc., 2016 OK 69376 P.3d 212Christian v. Gray, 2003 OK 1065 P.3d 591

Badillo v. Mid Century Ins. Co., 2005 OK 48121 P.3d 1080

Gillham v Lake Country Raceway, 2001 OK 4124 P.3d 858prima facie case for recovery).

Cf. Computer Publications, Inc. v. Welton, 2002 OK 5049 P.3d 732de novo review of a motion for a directed verdict the court regards as true all evidence favorable to the non-moving party and all reasonable inferences drawn therefrom, and disregards all evidence favorable to the moving party, "unless there is an entire absence of proof on a material issue").

21 O.S.2011 § 92

Wells v. Okla. Roofing & Sheet Metal, L.L.C., 2019 OK 45457 P.3d 1020

2021 OK 7481 P.3d 8831992 OK 145846 P.2d 3621982 OK 112652 P.2d 283

Id. 2021 OK 7City of Tulsa v. State ex rel. Public Employees Relations Bd., 1998 OK 92967 P.2d 1214

Id. 2021 OK 7Independent School Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56473 P.3d 475Maule v. Indep. Sch. Dist. No. 9, 1985 OK 110714 P.2d 198

25 O.S.Supp.2014 § 314

A. Any person or persons willfully violating any of the provisions of this act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail for a period not exceeding one (1) year or by both such fine and imprisonment.

B. Following a violation of this act, any person:

1. May bring a civil suit for declarative or injunctive relief, or both; and

2. If successful, shall be entitled to reasonable attorney fees.

C. If the public body successfully defends a civil suit and the court finds that the suit was clearly frivolous, the public body shall be entitled to reasonable attorney fees.

25 O.S. 2011, § 313

Hargrove v. U.S., 67 F.2d 820, 823, 90 A.L.R. 1276 (5th Cir. 1933) (citing Landen v. U.S., 299 F. 75 (6th Cir. 1924); U.S. v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922)).

Id. 67 F.2d at 823 (collecting cases including Potter v. U.S., 155 U.S. 438, 15 S.Ct. 144, 39 L.Ed. 214 (1894); Felton v. U.S., 96 U.S. (6 Otto) 699, 24 L.Ed. 875 (1877); Spurr v. U.S., 174 U.S. 728, 19 S.Ct. 812, 43 L.Ed. 1150 (1899)).

The Construction of Statutes § 275, at 555-556 (1940) (citing, State v. Lindberg, 125 Wash. 51, 215 P. 41 (1923); Hargrove v. U.S., supra note 29.

Staples v. U.S., 511 U.S. 600, 617, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1993) (when defining a public welfare offense, usually imprisonment is not imposed for a public regulatory offense; and noting "imprisonment for a crime that requires no mens rea would stretch the law regarding acts mala prohibita beyond its limitations") (citing Tenement House Dept. v. McDevitt, 215 N.Y. 160, 168, 109 N.E. 88, 90 (1915) (Cardozo, J.); People ex rel. Price v. Sheffield Farms--Slawson--Decker Co., 225 N.Y. 25, 32--33, 121 N.E. 474, 477 (1918) (Cardozo, J.); id., at 35, 121 N.E. at 478 (Crane, J., concurring)). Staples also noted that the court in State v. Lindberg, supra note 31, departed from the usual practice when the state court applied "the public welfare offense rationale to a felony." Staples, 511 U.S. at n. 14, 617; cf. Cheek v. United States, 498 U.S. 192, 199-200, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (Congress changed a common-law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses, and the Court interpreted the statutory term "willfully" as used in the federal criminal tax statutes as carving out an exception to the traditional rule.)

Liparota v. U. S., 471 U.S. at 433 (quoting U. S. v. Dotterweich, 320 U.S. 277, 284, 64 S.Ct. 134, 138, 88 L.Ed. 48 (1943)),

Id.

United States v. Cox, 906 F.3d 1170, 1185 (10th Cir. 2018), cert. denied, 139 S. Ct. 2690, 204 L.Ed. 2d 1090 (2019), and cert. denied sub nom. Kettler v. United States, 139 S. Ct. 2691 (2019) (In a controversy involving two provisions of the National Firearms Act (26 U.S.C. §§ 5801--5872)(NFA), court noted "presumption that criminal liability should attach only when a defendant knows the facts that make his conduct illegal, by requiring that the defendant know the characteristics of a firearm that bring it within the NFA's ambit.").

Id. 906 F.3d at 1194-1195 (Pursuant to Staples v. United States, 511 U.S. 600 (1994) "certain factual mistakes (e.g., that a firearm isn't a 'firearm' for NFA purposes) may provide a defense to a charge of violating the NFA, but legal mistakes (e.g., that the NFA doesn't apply to locally made firearms) do not.").

See, e.g., 21 O.S.2011, § 152

U. S. v. Quarrell, 310 F.3d 664, 675-676 (10th Cir.2002) (when a defendant is charged with "knowingly" violating the Archaeological Resources Protection Act (16 U.S.C. §§ 470aa et seq.), the purpose of the Act is not frustrated by defendant raising the defense based on his reasonable belief that he was lawfully excavating on private land with permission and had an honest mistake of fact).

See, e.g., Marianne M. Jennings and Nim Razook, Duck When a Conflict of Interest Blinds You: Judicial Conflicts of Interest in the Matters of Scalia and Ginsberg, 39 U.S.F. L. Rev. 873, n.98, 901 (2005) (the American Bar Association, American Civil Liberties Union, and former U. S. Supreme Court Justice Scalia criticized malum prohibitum conflict of interest laws because they focused on the penultimate rather than ultimate (malum in se) act); Arias v. Lynch, 834 F.3d 823, 832 (7th Cir. 2016) (Judge Posner, concurring) (described crimes mala in se and mala prohibita and concluded "the distinction turns out to be paper thin").

People v. Brooks, 1 Denio 457, 459, 43 Am.Dec. 704 (Sup.Ct.N.Y.1845) (A "willful neglect" of a statutory duty by a public official occurred when he refused to perform a mandatory duty, and the official "knew what was asked of him, he knew what he refused, [and] there was nothing like surprise, inadvertence or misapprehension" on the part of the official.); cf. Theodore Sedgwick, A Treatise on the Rules Which Govern the Interpretation and Construction of Statutory and Constitutional Law, 80-81 (2d ed. 1874, Fred B. Rothman & Co. reprint 1980) (discussing People v. Brooks, supra).

See, e.g., David M. Uhlmann, After the Spill is Gone: The Gulf of Mexico Environmental Crime, and the Criminal Law, 109 Mich. L. Rev. 1413, 1458, n.267 (2011) (the Clean Water Act alternates between civil and criminal penalties as the violations become more egregious, and discharges without fault are strict liability civil violations; negligent discharges are misdemeanors; grossly negligent discharges carry heightened civil penalties; and knowing discharges are felonies) (citing Clean Water Act §311(b)(7)(A), 33 U.S.C. §1321(b)(7)(A) (2006) (strict liability civil penalties); 33 U.S.C. §1319(c)(1) (negligent misdemeanor criminal penalties); id. §1321(b)(7)(D) (gross negligence civil penalties); id. §1319(c)(2) (knowing felony criminal penalties)).

Hilliary v. State, 1981 OK CR 78630 P.2d 791

Id.

State v. Patton, 1992 OK 57837 P.2d 483

See, e.g., State v. Price, 2012 OK 51280 P.3d 943

State ex rel. Lydick v. Brown, 1973 OK 135516 P.2d 239Henry v. Oklahoma City, 1940 OK 472108 P.2d 148

State v. Smith, 1914 OK 282142 P. 408

Sample and whether a viable test method was available after Sample but prior to the Board creating new rules. This issue is not presented as part of the appellate controversy, and we need not address the hypothetical issue. Tulsa Cty. Budget Bd. v. Tulsa Cty. Excise Bd., 2003 OK 10381 P.3d 662

Moran v. City of Del City, 2003 OK 5777 P.3d 588

Id. 2003 OK 57

Brewer v. Murray, 2012 OK CIV APP 109292 P.3d 412012 OK 100290 P.3d 758Restatement (Second) of Torts § 289(b), and concluding parent was charged with superior knowledge, perception, intelligence and judgment regarding parent's daughter due to parent's prior experiences and relevant to using reasonable judgment for the purpose of exercising parental control over daughter).

Restatement (Second) of Torts § 289 (1965):

The actor is required to recognize that his conduct involves a risk of causing an invasion of another's interest if a reasonable man would do so while exercising

(a) such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a reasonable man would have; and

(b) such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has.

Moran v. City of Del City, supra note 50, at ¶ 11, 77 P.3d at 592 (quoting Prosser and Keeton on the Law of Torts, 182 (5th ed.1984) (discussing negligence of an actor)).

Foster v. Emery, 1972 OK 38495 P.2d 390

Altman v. Aronson, 231 Mass. 588, 591-592, 121 N.E. 505, 506 (1919) (defining negligence and gross negligence).

Farley v. City of Claremore, 2020 OK 30465 P.3d 1213

2019 OK 45457 P.3d 1020

 

 

KUEHN, J., DISSENTING:

¶1 I agree that this case turns on whether the violation of the Open Meetings Act here was willful. However, the meaning of "willful" is not an issue in this case. "Willful" within the Open Meetings Act was thoroughly discussed and clearly defined in a published Court of Civil Appeals opinion in 1981. In the Matter of the Appeal of the Order Declaring Annexation Dated June 28, 1978, issued by Gene Frazier, 1981 OK CIV APP 57637 P.2d 1270Rogers v. Excise Board of Greer County, 1984 OK 95701 P.2d 754Fraternal Order of Police v. City of Norman, 2021 OK 20489 P.3d 20

¶2 The Frazier test to determine whether violations of the Open Meetings Act are willful is whether an action or inaction of a mandate of the Act is done in a "conscious, purposeful" way or is a "blatant or deliberate disregard of the law by those who know, or should know, the requirements of the Open Meeting Act." Frazier, 1981 OK CIV APP 57. What willfulness does not require under this Act is a showing of "bad faith, malice, or wantonness." Id. Interestingly, the Majority quotes this language in paragraph 34 of the Opinion, but apparently fails to recognize that it is the dispositive test.

¶3 In reviewing the trial court's decision, the Court of Civil Appeals recognized the willfulness test set forth in Rogers and Frazier, but did not apply it. Instead, the Court unnecessarily redefined it. The Court, mistakenly analyzing previous cases by their facts and not by legal theory, determined that a willful violation of the OMA requires an intent to violate the OMA, with a motive to violate the OMA, and further found that the intent can even be inferred by the actions of a party who violates the OMA. Id. The facts of each of the cases analyzed by the Court of Civil Appeals happened to fall under the "conscious, purposeful" category -- that is, the facts in those cases fell under the first prong of the Frazier test. When looking to only the facts of those cases, the Court then mistakenly assumed that intent was an element of willful. This is not correct. Under the second prong, a willful action might violate the Act if it was made in blatant or deliberate disregard of the law, by someone who should have known better. This clearly requires no intent.

¶4 The Majority, on certiorari review of the Court of Civil Appeals opinion, appears to reject that Court's addition of "intent" to the Frazier test. However, instead the Majority spends time toiling over what "willful" means in the OMA. In doing so, the Majority also unnecessarily reworks the willfulness test outlined in Frazier.

¶5 But neither of the reviewing courts' analyses on the meaning of willful is necessary here. The real problem to be solved began with the district court's written findings. The district court correctly held that he was to make a factual determination of whether a "willful" violation of the Open Meeting Act occurred under the "holdings of Frazier...." After that pronouncement, however, the trial court did not delineate the test announced in Frazier and did not apply the facts to that test. Without more specific findings, no appellate court can determine what the trial court decided in this case. Was the trial court considering that the Board representative, who knew or should have known the Act's requirements, violated the Act with blatant or deliberate disregard of the law? If so, what facts that the trial court lists in the findings helped him reach that result? Or was the trial court applying only a portion of the Frazier test? Or did it misunderstand the test completely? We do not know.

¶6 I would vacate the Court of Civil Appeals opinion and remand the case back to the trial level for the district judge to determine under Frazier what facts support a finding of a willful violation.